Strafford,
No. 4412.

WILFRED H. LEGACY, JR.

*v.*

CLAROSTAT MANUFACTURING COMPANY & *a.*

Argued June 7, 1955.

Decided June 30, 1955.

*Upton, Sanders & Upton* (*Mr. Richard F. Upton* orally), for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown* and *Wesley E. Whitney* (*Mr. Whitney* orally), for the defendant Clarostat Manufacturing Company.

*James M. Riley, Edward F. Smith* and *Winslow H. Osborne* (*Mr. Riley* orally), for the defendant State of New Hampshire.

BLANDIN, J. The parties agree that the issue here is whether a stoppage of work due to a labor dispute caused the plaintiff's unemployment, and that if it did, he cannot recover under R. L., *c.* 218, *s.* 4 D, as amended, even though the strike ended some weeks before he returned to work. The question must be determined upon the facts before us in the light of general principles of causation. Much confusion has arisen in the law on this subject, chiefly because of a failure to distinguish between causation alone and

matters of policy which often influence the result. 25 Harv. L. Rev. 103-104, 227; Prosser, Torts, *pp.* 312-315, and numerous authorities cited.

It is conceded that because of the strike over three-quarters of the employees, including the plaintiff, left their work and the defendant company was forced to operate with a skeleton force from the date the dispute commenced on December 2, 1952, until it terminated on December 26 by agreement between the plaintiff's union and the defendant. After that date and until the plaintiff was recalled on January 17, 1953, the company was endeavoring to resume normal operations. Since the plaintiff worked in the shipping room, which was the last link in the "assembly line" method of production employed by the defendant, he would naturally be among the last to be rehired. The Court has in effect made a finding, clearly sustainable on the record and not challenged by the plaintiff, that until he was rehired the company reasonably continued with the policy forced on it by the work stoppage of using supervisors and various employees who, because of the strike, were not otherwise fully occupied to do the plaintiff's work. Notwithstanding this, he claims that as he was entitled to seniority the failure to rehire him as soon as there was enough work for one shipping clerk to do was an "intervening cause" so that his unemployment was no longer due to the strike and he is entitled to compensation for the weeks ending January 10 and January 17, 1953.

Concededly the labor dispute was originally not only a "substantial factor" but the sole reason for the work stoppage, and by all accepted tests was therefore causal of the plaintiff's unemployment (*Labor* v. *Public Service Co. of N. H.*, 92 N. H. 256, 259) unless there was an intervening cause. Restatement, Torts, *s.* 431. Had the company not permitted the plaintiff's work to be done by others during the readjustment period while it was returning to full production, it would have been forced to the costly and time consuming task of analyzing the work load of each job daily to see if it were sufficient so that a particular employee should be rehired. Also, if the plaintiff's position is tenable, the defendant would have been compelled to rehire many strikers on a part-time basis thereby throwing out of work other employees who would thereupon be entitled to compensation.

It was to be anticipated that the company would endeavor to

operate in an efficient, economical manner rather than a time consuming and costly one while in the process of returning its plant to full capacity. This was clearly recognized both by the union and the defendant as evinced by their agreement which provided that the company should recall workers in order of their departmental seniority "as such jobs should necessitate in the judgment of the company." It therefore follows that the defendant's failure to rehire the plaintiff sooner than sound business policy required was actually foreseen and was in no sense an intervening cause. 60 Yale L. J. 761, 794. The plaintiff's unemployment began because of a stoppage of work due to a labor dispute and would not have continued "but for" this stoppage. Even authorities taking generally a favorable view of claimants' rights concede in these circumstances that the stoppage is causal of the unemployment. 17 U. of Chi. L. Rev. 294, 313, 315; see also, 8 Vand. L. R. 338. The cases cited by the plaintiff where the courts have held an intervening cause existed are all distinguishable from the situation here as in *Unemployment Commission* v. *Aragon*, 329 U. S. 143, where the employer decided to halt all operations without reference to the labor dispute.

The general intent of our Legislature was indisputably to relieve the employer of the burden of paying unemployment benefits during a "stoppage of work which exists because of a labor dispute." R. L., c. 218, s. 4 D. Whenever they wished to make an exception to this rule they said so plainly. *S.* 4 D, *supra*, pars. (1)-(3) as amended; see also, *Amory Worsted Mills* v. *Riley*, 96 N. H. 162. The plaintiff's case falls within none of the exceptions.

While the plaintiff concedes the work stoppage may have continued after the termination of the dispute, he contends that as to him it ended when there was work enough for one shipping clerk to do. This assumes that the work stoppage is to be determined from the standpoint of the individual employee rather than the operation of the plant as a whole. This is not so as has been previously stated. It is admitted that the work stoppage as to the plaintiff was caused originally by a labor dispute. Because of this dispute the stoppage continued to exist even as to this plaintiff's individual job until management in the exercise of reasonable judgment rehired him. The weight of authority and we believe the better view reaches this result in similar cases holding that a stoppage of work does not cease until normal operations may reasonably be resumed by the employer. *In re Stevenson*, 237 N. C.

528, and cases cited; *Lawrence Baking Co.* v. *Unempl. C. C.*, 308 Mich. 198. Such operations had not been resumed before the plaintiff's reemployment on January 17, 1953. It follows the order is

*Judgment for the defendant.*

All concurred.