## Lawrence F. Willard v. Vermont Unemployment Compensation Commission

[173 A.2d 843]

May Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed September 5, 1961

*Raymond S. Fitzpatrick* for the defendant.

**Barney, J.** Lawrence F. Willard, the claimant, has been a carpenter for the past thirty-two years, except for two and one-half years as a plant guard at a tool company in Springfield, Vermont. On December 29, 1958, he suffered a severe heart attack and was hospitalized for five weeks at the Veterans Administration Hospital. He was discharged on January 28, 1959 and registered for work at the employment office in Brattleboro on March 2, 1959. On March 13, 1959, the claimant's application for unemployment compensation was denied by the claims examiner. Thereafter he pursued his administrative remedies to a final review by the Vermont Unemployment Compensation Commission itself. When his claim was turned down there he filed a petition for review in the Brattleboro Municipal Court under the provisions of 21 V.S.A. §1353. After hearing, the court made findings and issued its judgment order allowing the claim for unemployment compensation. The commission claims error and brings this appeal.

21 V.S.A. §1353 contains the following provisions: "Proceedings on any such petition relating to or arising out of a claim for benefits shall be heard by the municipal court or court of chancery to which it is directed within thirty days after the filing thereof." The claimant's petition was filed with the court on June 19, 1959. On July 25, 1959, the commission moved for dismissal of the action for failure to hold a hearing within thirty days as required by the statute. The court in its findings states that this ground for dismissal was orally waived at the hearing. This is not denied by the commission, but it is claimed that the thirty-day hearing requirement is a prerequisite to jurisdiction over the subject-matter and cannot be waived.

It must be conceded that the statutory pattern of the unemployment compensation law makes timely progress critical in pre-

serving rights. Undoubtedly procedural steps in the unilateral control of the advancing party are subject to strict enforcement and must be complied with to preserve the right of appeal. The ten and five day provisions relating to the time for filing notices of appeal under 21 V.S.A. §1353 are of this type.

■ The matter of the requirement of an early and prompt scheduling of a hearing stands differently, in that the advancing party does not have entire control of the situation. To hold that failure by the court to hold a hearing within the thirty-day period was such a jurisdictional necessity that it could not be waived might easily deprive a meritorious claimant of a right of review without fault on his part. This would run counter to the statutory principle that provisions of this enactment be liberally construed to effectuate the rights accorded under it. This Court therefore holds that the presence on the record of an express waiver by the commission of the objection based on the failure to come to trial within thirty days enabled the court validly to proceed to hearing on the merits.

Turning now to the commission's claims of error with respect to the substance of the hearing it immediately appears that there is no significant conflict in the evidence of the parties. Briefly stated, the commission's contention is that proper application of the compensation law to the facts found by the municipal court requires that compensation be denied.

At the hearing the claimant furnished medical testimony which was reflected in the court's findings stating that he is able to perform light work involving no lifting on a full time basis, but no heavy work. Light work is found to be of benefit in his physical rehabilitation. No question is raised at this time about his compliance with the formal prerequisites for making a claim for unemployment benefits. The court found that opportunities for employment at suitable light work existed in the area; that the claimant was able to work and available for work during the period in question.

It was also disclosed at the hearing that the claimant, while hospitalized, applied for a non-service connected disability pension. Such a pension was awarded him in March, 1959, and he has received his monthly pension regularly since. Eligibility for such a pension is, by federal law, conditioned upon total and permanent disability and an inability to follow any gainful occupation. The municipal court, after finding these facts, went on to find that the claimant was not totally

and permanently disabled within the meaning of the Unemployment Compensation Law.

The commission argues that permanent, total disability as a matter of law makes erroneous the findings that the claimant is able and available to work. In view of the testimony and findings unchallenged that show the claimant capable of undertaking some sort of light duties, this necessarily means that the commission contends that the phrases "able to work" and "available for work" have a particular meaning here, conditioned by the statutory purposes. With this we agree. To hold that willingness and ability to do any single operation which could justify the label "work" was intended would make the statute meaningless and defeat its purpose. Its object is to assist members of the working force who are made jobless by operations of the economy over which they have no individual control.

Construction of the phrases "available for work" is a matter of first impression in this jurisdiction. Since all state statutes were inspired by federal enabling legislation and drafted with an eye to uniformity, views of other courts on the meaning of such statutory language are helpful. The following quotation from Freeman, *Able to Work and Available for Work,* (1945), 55 Yale Law Journal 123, 124, is an excellent and frequently-cited expression of the generally-accepted meaning:

"The availability requirement is said to be satisfied when an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Since, under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them."

Availability for work is made a condition of eligibility for unemployment compensation by the provisions of 21 V.S.A. §1343(3). For clarity, the eligibility provisions must be read with the disqualification provisions. 21 V.S.A. §1344(3) provides that failure, without good cause, to apply for available, suitable work or to accept suitable work when offered, shall disqualify for unemployment benefits. Subsection A of section 1344(3) states that claimant's physical fitness and the degree of risk to his health may be considered in evaluating the "suitability" of the work.

In the definition quoted above we encounter the concept of "attachment to a labor market." As so often occurs when attempts are made to mark out the precise limits of meaning of statutory language, substitute terms are introduced which, in their turn, renew the problem of determining exact meaning. However, the words employed here have been resorted to so frequently by courts and writers in the field as to form part of the special language of unemployment compensation.

█ █  The claimant has the burden of demonstrating his right to the relief he seeks. Ordinarily, availability is *prima facie* established by a showing of proper registration for work with the commission, subject only to the commission's right to require the claimant to provide evidence of efforts to secure suitable work, 21 V.S.A. §1343(3). The benefit of this presumption may be lost when it is shown that the claimant has sought to avail himself of pension privileges. *Zelek* v. *Unemployment Compensation Board of Review,* 194 Pa. Super. 228, 166 A.2d 110. This may be based on a construction of the acceptance of the pension as a voluntary leaving of employment without good cause, which is not this case. However, as stated in *Fleissig* v. *Board of Review,* 412 Ill. 49, 52, 104 N.E.2d 818, acceptance of retirement benefits may be taken as evidencing an intention to retire from gainful labor. The act of retirement is there said to disclose a mental attitude inconsistent with the allegation of attachment to the labor market.

█ █  However, this Court agrees with the statement of Brennan, J., in *Krauss* v. *Karagheusian,* 13 N. J. 447, 458, 100 A.2d 277, that the act of taking a pension is only inferentially indicative of withdrawal from the labor market and, as an inference, is subject to being overborne by other proofs showing that a claimant has in fact a genuine attachment to the market. Enough has been said to indicate that it is

the position of this Court that the burden of establishing attachment to a labor market is on one who has accepted a pension which is designed to pay compensation in lieu of employment, whether conditioned on age or infirmity.

We agree with the trial court that a determination of total disability by the Veteran's Administration does not compel the denial of unemployment compensation. It does have evidentiary value with respect to the availability for work of the claimant. It is certainly neither impossible nor improbable that one eligible for permanent disability compensation as a veteran could attach himself to a portion of the labor market where his disability had no effect on his employability. The issue in question is to be examined in terms of his attachment to the labor market, rather than in terms of the quantitative measure of his disability. The relevance of his infirmity relates to the state of his employability, in that a worker is not a part of a labor market in which his disability excuses his acceptance of employment.

The claimant here is suffering from a physical disability which limits the kinds of employment he can accept without threat to his health. The claimant's worthiness for compensation based on his impaired physical condition must not lead us to stray from the specific objectives of the statute under which relief is here being sought. It is not the purpose of the unemployment compensation law to provide sick benefits nor to compensate those who cease working because of illness. *Molton* v. *Unemployment Compensation Board of Review,* 194 Pa. *Super.* 190, 166 A.2d 103, 104; *Palovich* v. *Unemployment Compensation Board of Review,* 194 Pa. Super. 198, 166 A.2d 339; *Rivers* v. *Director,* 323 Mass. 339, 342, 82 N.E.2d 1. In fact, the claimant's incapacitating illness and subsequent disability add to his burden of establishing his reattachment to the labor market. The fact that a claimant terminated his employment for a reason recognized as good cause under the statute does not in itself entitle him to benefits. It is still incumbent upon him to establish his availability for work within the meaning of the statute. *Gearhart* v. *Unemployment Compensation Board of Review,* 194 Pa. Super. 418, 168 A.2d 646, 647.

The conditions and limitations which a claimant imposes upon his employment, whether voluntary or involuntary, may render him unavailable for work and bar his recovery of unemployment

benefits. A willingness to be employed conditionally does not necessarily meet the test of availability. *Ellis* v. *Employment Security Agency*, Idaho, 358 P.2d 396, 398; 81 C.J.S., Social Security and Public Welfare, §204, p. 304. Limitations placed on availability for employment have the effect of circumscribing the labor market to which the claimant asserts attachment. If the imposed conditions are used to justify the refusal of suitable employment, yet have no sound causal basis, the statute bars the recovery of benefits. 21 V.S.A. §1344(3).

A more difficult situation obtains where the circumstances, such as the physical disability here involved, do amount to "good cause" to refuse certain employment. It is generally held that a claimant is not attached to a labor market in which he can, with "good cause," refuse employment. A claimant cannot contend that he is an unemployed constituent of a labor market in which his disability will, under the statute, excuse him from accepting employment. Otherwise his right to compensation would be generated by his disability, not his involuntary unemployment. It is often stated in the cases, in language to the effect that a cause that justifies an employee in leaving employment, or in refusing offered employment, will also, in most instances, prevent him from meeting the test of availability for work and thereby disqualify him from receiving benefits. See *Dancho* v. *Unemployment Compensation Board of Review*, 194 Pa. Super. 218, 166 A.2d 81, 82. If such a claimant is able and available to do suitable work in spite of his disability, he may still be entitled to benefits. *Palovich* v. *Unemployment Compensation Board of Review*, 194 Pa. Super. 198, 166 A.2d 339, 340.

This claimant contends that his situation falls in such a category. He claims to be available for suitable work, characterized as "light," in spite of his physical condition. In effect, he is claiming attachment to a labor market of very special characteristics. To establish his case, the claimant had to overcome the presumption raised by his pension application, establish his physical ability to perform marketable employment and evidence the existence in the geographical area of a market for the services he was able to perform. All this is encompassed in the concept of "availability" as it relates to the circumstances of this claimant.

■ The commission takes the position that the claimant's availability was so restricted that there was no area labor market to which he was attached. The trial court found as a fact that "opportunities for light work within the physical capability of the claimant" were present within a twenty-five mile radius of his home. Having in mind the rule that a finding will stand if supported by any substantial evidence, the commission's contention that this finding is without evidentiary foundation appears sound. The claimant, as the burdened party below, has not pointed out to us any testimony in the case justifying the trial court's finding and refuting the commission's position. An examination of the transcript by this Court discloses no evidence of substance sufficient to support the finding as a matter of law. Nor do the findings themselves establish that this light work which is within the capability of the claimant amounts to substantial employment. Without such a showing, claimant's attachment to the labor market is not made manifest. See 81 C.J.S., Social Security and Public Welfare, §205, page 305. What this "light work" consists of is not particularized, and how its suitability for the claimant's physical condition was arrived at is undisclosed, either by the findings or the transcript. The finding cannot stand.

Without it the ultimate finding that the claimant is available for work is unsupported and the judgment must be reversed.

*Judgment reversed and cause remanded.*