## In re: Charles A. Dunn

[305 A.2d 602]

No. 144-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 3, 1973

Motion for Reargument Denied May 4, 1973

*Zander B. Rubin, Esq.,* Vermont Legal Aid, Inc., Rutland, for Plaintiff.

*Kimberly B. Cheney,* Attorney General, and *Raymond S. Fitzpatrick,* Assistant Attorney General, for Employment Security Board, Defendant.

**Daley, J.** This is an appeal from a decision of the Vermont Employment Security Board (hereinafter called the board), denying the appellant's claims for unemployment compensation benefits. The three questions of law which were certified to this Court by the board as required by V.R.A.P. 13(d) are as follows:

> (1) Does the evidence in the case tend to support the findings of fact of the Vermont Employment Security Board?

> (2) If the evidence in the case fairly and reasonably tends to support the findings of fact, do the findings of fact fairly and reasonably tend to support the conclusions of the Vermont Employment Security Board?

> (3) If the findings of fact fairly and reasonably tend to support the conclusions of the Vermont Employment Security Board, do the conclusions fairly and reasonably tend to support the decision of the Board in this case?

The appellant, a man sixty-eight years of age, left his previous job at the Pownal Tannery on July 2, 1971, for health reasons. He then sought employment in the area in which he resided, but was unable to secure any employment.

He submitted his first claim for benefits on July 7, 1971, and continued to submit claims each week subsequent thereto. From September, 1971, through November, 1971, the appellant was treated for a peripheral vascular disease, and as of the date of his last treatment on November 22, 1971, he could only perform work that was completely sedentary. The appellant concedes that he was not eligible for benefits during those weeks that he received the aforementioned treatment.

On December 7, 1971, the claims examiner denied the appellant's claims for benefits. Subsequently, the appellant's condition improved. A medical report dated February 4, 1972, showed that he was treated for painful metatarsal arches from January 31 to February 4, but this report stated that he could perform light work.

On February 22, 1973, the appeals referee, reviewing the decision of the claims examiner, found that the appellant was willing and able to perform light work, and that since November 27, 1971, the appellant made thirty-eight contacts seeking work. However, the contacts only consisted of nine employers, only two of which were outside the town in which he resides. The majority of the contacts were repeat contacts.

The referee, citing 21 V.S.A. § 1343(a)(3), concluded:

> "[C]laimant's actions are not those of a prudent individual actively seeking work and, he fails to show a genuine attachment to the general labor market. An individual to be considered available for work, within the meaning of the statute, must be seeking work within all of his labor market area and, not continually contact the same employers each week seeking work where he knows they are not hiring new employees."

On February 29, 1972, the appellant took an appeal from the decision of the referee to the board with a request to present additional evidence. That evidence, in addition to the records of the evidence presented in the proceedings before the examiner and the referee, was the testimony of the

appellant himself and a Mr. Frank H. Mudgett, the manager of the Unemployment Compensation Division of the Department of Employment Security.

Mr. Mudgett was called upon by the chairman of the board to testify on the labor market area for a person from the appellant's place of residence. Mr. Mudgett testified that he was unfamiliar with the labor market of the appellant's place of residence.

The appellant himself was questioned as to the labor market around his place of residence. He listed several businesses, all of which were listed on his claims for benefits as contacts for employment.

When questioned about his health, the appellant responded, "Well, I'm in good health I know."

The appellant next testified as to his job experience. Comparing his testimony with his entries under "Type of Work Sought" on his claims for benefits, those types of employment were those in which he had previous experience.

The questioning of the appellant then was directed to the location of the employment sought and available transportation. He testified that most of the employment sought was within walking distance, i.e., within two miles from his home. He had contacted employers outside of this two mile radius by having his son take him in his car (his own car being inoperable), and his applications indicated the use of the telephone for other contacts. When questioned about his use of existing public transportation, he testified that the buses ran every two hours and did not run after 6 p.m., and he had not utilized such public transportation in seeking employment.

Following findings of fact, the board, citing 21 V.S.A. § 1343 (a) (3), concluded:

> "[T]he claimant . . . was able to perform light work. It is further concluded that claimant is not available for work when his contacts for work are limited to employers within walking distance from his home, when he has no transportation to work and has made no effort to utilize such public transportation as may be available, and when it has not been shown that there is a substantial amount of work that he is able and capable

of performing in the limited area within which he could accept work."

The board decided that: "The decision of the Appeals Referee is affirmed and claims for and subsequent to the week ending November 27, 1971, are denied accordingly."

The portion of the statute cited by both the appeals referee and the board as authority for denying the appellant's claims for unemployment compensation benefits is from 21 V.S.A. § 1343(a)(3), which reads as follows:

> "An unemployed individual shall be eligible to receive benefits with respect to any week only if the commissioner finds that:
>
> .    .    .    .    .    .    .    .    .
>
> (3) He is able to work, and is available for work . . . ."

Both the hearing referee and the board found that the appellant was able to perform light work. But the appellant was denied unemployment compensation benefits because he was found not to be available for work.

This Court has utilized the definition found in Freeman, *Able to Work and Available for Work*, 55 Yale L.J. 123, 124 (1945), to define the phrase "available for work", in *Willard* v. *Unemployment Compensation Commission*, 122 Vt. 398, 402, 173 A.2d 843 (1961):

> "The availability requirement is said to be satisfied when an individual is willing, able and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Since, under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services

which an individual is offering is generally performed in the geographical area in which he is offering them."

The circumstances in which the appellant found himself after termination of his employment with the Pownal Tannery were as follows: He could perform light work. He lived in an urban community of between 8,000 and 10,000 in population. Subsequent to the termination of his previously existing employment, his automobile became inoperative, limiting the area of his search for employment. He began making contacts for employment in the urban community within walking distance from his home. On each claim for benefits that he filed, except those filed immediately after the termination of his prior employment and while he was hospitalized for peripheral vascular disease, he listed the contacts he made seeking employment under the heading "Places Contacted". The total number of contacts he made exceeded thirty in number, practically all of which were in the urban community in which he lived. His limited contacts with employers outside of the community in which he lived yielded generally negative results.

The appellant's notations under "Type of Work Sought" on his claims for benefits were counterman, price stamper, gas attendant, cashier, clerk, etc., all of which connote the performance of light work. Furthermore, neither the referee nor the board made any finding that such opportunities for light work that were present within the geographical area where he conducted his search were insufficient to establish a labor market for light work in the urban community where the appellant lived. Hence, there is a showing by the appellant that a labor market for light work did in fact exist in the geographical area where the appellant conducted his search for employment, and the board should have so found.

However, both the referee and the board faulted the appellant for the type of search that he made for employment, i.e., a failure to show "a genuine attachment to the labor market." The referee found fault in that the appellant continually contacted the same employers. The board, affirming the referee, also found fault in the appellant's failure to

utilize available public transportation in his search for employment.

A test as to the sufficiency of the search for employment to establish availability was stated in Freeman, *Availability: Active Search for Work,* 10 Ohio S.L.J. 181, 185 (1949):

> "To establish availability for work a claimant should be expected to do what a reasonable man in the same circumstances would do to obtain work suitable for him."

■ There is no question that the appellant did make repeated contacts with the same prospective employers. However, in reviewing his claims for benefits, the appellant made the following notations under the "Results" column of the list of contacts for employment: "call back", "nothing now", "come back later", "no openings now", "will let me know", "call back next week", "not hiring", or "no openings". Such notations indicate that there might have been employment in the near future in any of those places which he contacted. Under such circumstances, a prudent individual would be well justified in returning to prospective employers already contacted to determine whether or not an employment opening had later occurred which he could fill. Under these circumstances, it was reasonable for the appellant to return to the same prospective employers when, by his own notations, it was indicated to him that employment might be available in the near future.

The appellee also maintains that "Lack of transportation renders a claimant unavailable", citing numerous cases from other jurisdictions. However, in examining the factual situations of the cases cited, the claimants lacked transportation for travel to previously existing available employment. In the situation at hand, a labor market already existed for light work which the appellant was able to perform with the geographical area of his search for employment.

■ A limited search outside the urban community in which the appellant resided displayed an absence of any employer willing to hire the appellant. Although it is undisputed that public transportation did exist which the appellant could have utilized, there was no evidence before the board dis-

playing that an increased labor market for light work would have been available to the appellant had he only utilized such public transportation. The appellant himself testified that a labor market existed near his home, naming several places of business, all of which he noted under "Places Contacted" on his claims for benefits. With no evidence before the board to indicate that the appellant had materially limited his attachment to an existing labor market by failing to utilize public transportation available, it was error for the board to conclude that the appellant was not available for work in the face of an already existing labor market for light work within the geographical area wherein he conducted his search for employment. The conclusions of the board, not supported by the findings or the evidence, cannot stand. *Eurich* v. *Coffee-Rich, Inc.*, 130 Vt. 537, 543, 298 A.2d 846 (1972). Therefore, the decision of the board must be reversed.

*Decision of the Vermont Employment Security Board reversed and cause remanded to determine the amount of benefits the appellant is entitled to by law.*