### In re May Barcomb

[315 A.2d 476]

No. 113-73

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed February 5, 1974

*Stephen R. Elias, Esq.,* and *Zander B. Rubin, Esq.,* Vermont Legal Aid, Inc., for Plaintiff.

*Raymond S. Fitzpatrick, Esq.,* for Department of Employment Security.

**Keyser, J.** This is an appeal from the decision of the Vermont Employment Security Board denying appellant's claim for unemployment compensation benefits under Title 21 of the Vermont Statutes Annotated.

The following facts are not in dispute. The appellant resided in Enosburg Falls, and was employed as a turner and presser for John's Dress Manufacturing Company in Richford, Vermont. In the spring of 1972, she left this work because she had no way to travel the ten miles from Enosburg Falls to Richford.

Subsequently, claimant began working at Sonny's Dress Shop in Enosburg Falls but due to financial trouble the shop closed terminating her employment there. In August, 1972, John told claimant he was opening a dress shop at what was formerly a fruit store in Enosburg Falls and asked her to come to work.

After claimant had worked there a day or so problems arose for John's regarding approval of the dress shop at that location and couldn't stay there. Claimant testified—"So, he [John] asked me if I'd be willing to go to the Richford shop to work until they got straightened around at the other [Sonny's] sewing room." Later, John's took over the Sonny's Dress Shop quarters and opened his dress operation there. Claimant asked John to return to the Enosburg shop but was never given the opportunity to do so.

She accepted the transfer to Richford because at that time she had an automobile and could travel between home and work. Her automobile was old and later became inoperative. Appellant attempted to continue work at Richford without a car, but on January 5, 1973, it caused her to terminate her employment because of this transportation problem. She immediately applied for unemployment benefits under Title 21 of Vermont Statutes Annotated. After hearings she was denied benefits by the claims examiner, appeals referee and the board and her appeal followed.

Questions certified to this Court by the board are whether the evidence supports the findings of fact of the board and whether the findings support the conclusion and decision of the board. Basically, the issues are (1) did claimant leave the employ of her last employing unit voluntarily without good cause attributable to such employing unit and (2) is claimant available for work?

She first claims that she had "good cause" to leave John's. 21 V.S.A. § 1344 provides in part:

An individual shall be disqualified for benefits: (1) When he has left the employ of his last employing unit voluntarily without good cause attributable to such employing unit. . . .

The board adopted as its findings the findings of the referee based on the evidence before the board and a review

of the evidence before the referee. It concluded thereon that the claimant left the employ of her last employing unit voluntarily without good cause.

Although appellant testified she was "promised" a job back in Enosburg when she went to the Richford shop, there was no finding to this effect. The evidence clearly establishes that the only reason for her leaving the Richford job was because she was without a car and had no transportation available to get to work.

■ Upon our review of the record we find there is present credible evidence which fairly and reasonably supports the board's findings of fact on this issue of "good cause." *In re Wheelock,* 130 Vt. 136, 139, 287 A.2d 569 (1972). There is no error in the decision of the board on that issue on such findings. Thus, the findings in this Court are to be affirmed even in the presence of substantial evidence to the contrary. *Id.* 130 Vt. at 141.

Claimant next contends that she was "available" for work sufficient to qualify her for unemployment benefits. She says she was forced to leave her last job because she could not afford to have her car fixed and had no transportation to work, and that following this she could not look for work outside of her town for the same reason.

The pertinent part of 21 V.S.A. § 1343(a)(3) reads:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if the commissioner finds that: . . . (3) He is able to work and is available for work; . . . .

The claims examiner found claimant's "labor market," that is, the area in which she must be "available" under § 1343(a)(3) in order to qualify for benefits as being "all of Franklin County." This was without any foundation in the evidence, was erroneous and unrealistic. The evidence shows that there was just the one manufacturing employer in Enosburg Falls. Many of the residents of Enosburg Falls went elsewhere to obtain work. There were garment manufacturing establishments in St. Albans, Swanton, and Richford as well as Enosburg Falls. Claimant had worked in the past at Richford and as far away as Burlington. At most the fore-

going area could be said to be her labor market but this does not alter her situation.

Claimant insists that she was available for work that she could reach without an automobile. The board concluded on its findings that since she had not sought, or would not accept work she could not reach on foot, that is outside Enosburg Falls, she was not available for work.

In this posture of the case the real question is whether Mrs. Barcomb can limit her labor market to an area which she could only reach on foot or by public transportation. In other words, was Mrs. Barcomb required to provide herself with automobile transportation to work and does the availability of transportation define the labor market? No authority has been cited to us that employers are responsible for providing its employees with transportation to their job site. The appellant does not take this position.

The key element here is the definition of "labor market." The concept of a "labor market" does not appear in the statutes but derives from the language of 21 V.S.A. § 1343, requiring unemployment benefits claimant to be "available for work."

The meaning of this phrase was first outlined in *Willard* v. *Unemployment Compensation Commission*, 122 Vt. 398, 402, 173 A.2d 843 (1961), and most recently in *In re Dunn*, 131 Vt. 261, 305 A.2d 602, 605 (1973). That meaning derives from L. Freeman, *Able to Work and Available for Work*, 55 Yale L.J. 123, 124 (1945).

These precedents make it clear that in Vermont "availability," and hence the applicable "labor market" in which an applicant must be "available," is a function of the individual applicant. An individual must offer his services in a market, and that market must be a sufficient geographical area to provide or encompass employers who use the type of services offered by this applicant.

In the *Dunn* case this Court found that the proper labor market could be limited to an area within walking distance of applicant's residence. Claimant Dunn there demonstrated that the "light work" services which he was offering were required in that area but were not available to him. *Id.* 305 A.2d at 605. Also in *Dunn* there was public transportation

available to jobs outside the geographical area and we specifically held that this did not automatically extend his labor market to include that outside area. *Id.* 305 A.2d at 606.

■■ Although it has not been phrased exactly this way, it appears that the degree of specialization in the services offered by an applicant affects the geographical size of his labor market. A person holding himself out as available for any "light work" can restrict the labor market to his home town if he shows that "light work" is required by employers there.

■ A person of highly specialized skills must be willing to travel a further distance and accede to a labor market of sufficient geographical area to include employers utilizing those specialized skills.

We said in *In re Potvin,* 132 Vt. 14, 313 A.2d 25 (1973), that applicants will not be forced to accept less demanding and rewarding jobs than those for which their training qualifies them, if they offer their services in a labor market where those jobs exist, just because such jobs are not immediately open.

■ The type of work sought and the proximity of demand for those services is far more important in defining the labor market than the presence or absence of automobile transportation, without more. No strict rule can be laid down that an automobile is or is not required in order to be available for work under the Unemployment Compensation laws.

■ The lack of transportation to work has been viewed as a domestic problem. *In re Prouty,* 131 Vt. 504, 310 A.2d 12, 15 (1973). Applicants cannot condition availability because of domestic problems, *Id.* 310 A.2d at 14–15, at least where there are in fact no jobs which could meet those conditions. *In re Platt,* 130 Vt. 329, 333, 292 A.2d 822 (1972). We held in *Nurmi* v. *Vermont Employment Security Board,* 124 Vt. 42, 47, 197 A.2d 483 (1963), that to be entitled to unemployment compensation, unemployed persons declining work must do so for good cause connected with the work itself rather than on account of personal inconvenience or home problems.

■   On the evidence presented the board, as trier of the facts, found that claimant was a turner and presser, that there was only one establishment using turners and pressers in Enosburg Falls, that there were others in the area, that claimant had worked outside Enosburg Falls in the past, and that she was not seeking and would not accept work outside Enosburg Falls. There is legitimate evidence which fairly and reasonably supports the findings of the board in this issue of availability for work and will not be disturbed by this Court. *In re Hatch,* 130 Vt. 248, 257–58, 290 A.2d 180 (1972). The board's conclusion that claimant was not available for work being supported by the findings must stand. *In re Barker Sargent Corporation,* 132 Vt. 42, 313 A.2d 669 (1973). Claimant has not borne her burden of showing availability. *In re Platt, supra,* 130 Vt. at 333.

The claimant further urges that the statutes on availability for work should be interpreted so as to allow her to collect benefits. Otherwise, she argues it would render the statute unconstitutional as it would then operate to deny her right to unemployment insurance benefits.

Appellant argues that her right to unemployment benefits was denied simply because she could not afford an automobile. She says that, if her labor market must be larger than Enosburg Falls, she must have an automobile to reach it and, since she cannot afford an automobile, she cannot be "available for work" in that market. She argues that denial of benefits for unavailability is, therefore, a denial of benefits because of her inability to afford an automobile.

Appellant says that this is discrimination against her by the board on the basis of a classification as to wealth. She says that this is only permissible under equal protection of laws when supported by a "compelling state interest," citing *Harper* v. *Virginia Board of Elections,* 383 U.S. 663 (1966).

■   The basic principle of equal protection is that the Legislature cannot legislate different treatment to persons placed in different classes when the criteria of that classification is wholly unrelated to the objective of the statute. *Eisenstadt, Sheriff* v. *Baird,* 405 U.S. 438, 447 (1971).

■   Constitutionally impermissible wealth classifications have been characterized by the United States Supreme Court

as (1) poverty rendering a class completely unable to obtain the desired benefit, and (2) absolute deprivation of the right to enjoy that benefit. *San Antonio School District* v. *Rodriguez*, 411 U.S. 1, 36 L.Ed.2d 16, 35–36 (1973). No impropriety arises if such a classification merely puts a burden on the right to such a benefit, if that burden is not insurmountable. *Id.*

It is clear to us that this appellant has not been classified on the basis of wealth in passing upon her claim for unemployment benefits. The record shows that the determination denying benefits was not made solely on whether or not she had an automobile, but on a series of factors, each of which was determined after a hearing. Among those factors were the type of work which appellant sought, the availability of that work, the circumstances surrounding her departure from her last job, the number of contacts made by her in seeking new work, the location of her residence, and apparently the fact that she has in the past owned and operated automobiles used for going to and from work. The record does not indicate that any inability of this appellant to own an automobile has resulted in an absolute deprivation of the right to enjoy unemployment benefits as appellant claims. Other factors clearly entered into the determination to deny those benefits.

Appellant argues that any classification which would result in her loss of benefits must be subject to the "compelling state interest" test to afford her equal protection of the law. In the area of economic and social welfare, state classifications need not be perfect, and they need only have some "reasonable basis." *Dandridge* v. *Williams*, 397 U.S. 471, 484 (1970); *Jefferson* v. *Hackney*, 406 U.S. 535, 547 (1972); *Graham* v. *Richardson*, 403 U.S. 365, 371–72 (1971); *U.S.D.A.* v. *Moreno*, 413 U.S. 528, 37 L.Ed.2d 72 (1973). "Compelling state interest" does not apply.

We believe that the provision of unemployment benefits falls clearly within the area of economic and social welfare. Additionally, there is some reason to believe that state insurance programs, like unemployment compensation, are distinguishable from welfare benefits and may be tested by an

even lesser standard. See *Shapiro* v. *Thompson,* 394 U.S. 618, 633, n. 10 (1969).

Appellant has not been classified on the basis of automobile ownership. She has not been discriminated against on the basis of wealth. Her right to equal protection of laws has not been violated. She concedes that the availability-of-transportation issue raised by her bears a "rational basis" to the purposes of the Unemployment Act. Her classification as "unavailable" for benefits, therefore, has a rational basis and is constitutionally sound even if it depends in part on her present lack of automobile transportation.

Appellant also argues that a determination that she is unavailable for work without an automobile will require her to move from her home to some place "with more numerous job opportunities" in order to qualify for unemployment benefits. In effect, she says, her exercise of her right to live where she wishes is being penalized. She must forego that right to qualify for unemployment benefits.

It is unquestioned that citizens of the United States have a constitutional right to interstate travel. *Shapiro* v. *Thompson, supra.* It may be that that right extends to intrastate travel, and it may include a correlative right to live in the place of one's choice. See concurring opinion of Justice Stewart in *Shapiro* v. *Thompson, supra.* Being rights impliedly guaranteed by the constitution, these rights are "fundamental rights". *San Antonio School District* v. *Rodriguez, supra,* 36 L.Ed.2d at 43. Fundamental rights may only be infringed by the State for a "compelling state interest." *Id.* 36 L.Ed.2d at 33; *Dunn* v. *Blumstein,* 405 U.S. 330, 335–36 (1972).

The key to appellant's argument is her statement that "in the absence of adequate transportation, it is clear that she would only qualify for unemployment benefits by moving to an area with more numerous job opportunities." This is not the state of the record.

As discussed above, appellant was denied unemployment benefits for reasons more complicated than that. The variety of factors, upon which the record shows the determination to deny benefits was made, negates the allegation that the determination was based on the failure of appellant to move;

just as it negates the allegation that it was made merely because appellant did not have an automobile.

■ ▪The effect of the decision below is not that appellant must move to qualify for benefits. She was not classified as "unavailable" simply because she would not or did not move. In fact, it may be that she had to move in order to keep her Richford job, and she elected not to do so as a matter of her own choice. However, she does not have an unqualified right to benefits simply because she was unable to arrange transportation to Richford. This does not fall within the purposes of the Unemployment Compensation Law.

The exercise of a choice by a worker may have unfortunate consequences with him, but there are some things to which a worker must accommodate himself. The unemployment compensation fund is an employer contributed fund and is not tax supported. It is only by meeting the availability provisions of the Unemployment Compensation Law that benefits may be allowed.

The thrust of appellant's argument is that she has been denied benefits simply because she cannot afford an automobile. She cites cases in which the right to vote was denied simply because of inability to pay the poll tax, and the right to vote or to have welfare benefits was denied simply because durational residency requirements were not met. In these cases the benefit was denied on the basis of a single arbitrary classification made for large groups of people on a single criteria. That criteria had no relation to any legitimate goal related to the underlying benefit.

This classification of appellant as unavailable is not based on any single criterion, it is not arbitrarily applied to large groups of people, and it is concededly made with a view to exposing workers to a maximum number of job opportunities —a rational goal related to the purposes of the benefit in question. A specific finding was made in this case, on the basis of many factors, that this particular appellant was not available. Her final classification as unavailable was in no way arbitrary or capricious but was based on evidence received at a full hearing, and after due consideration.

Other than the bare fact that a classification was made, the voter residency, welfare benefits residency, and poll tax

cases cited by appellant have nothing in common with this classification. They were classifications of thousands of people by legislative or administrative fiat for reasons which bore no rational relationship to the purposes alleged for the classification. This appellant has not been so classified.

*Judgment affirmed.*