# Jennifer P. Stoodley v. Department of Employment Security

[449 A.2d 980]

No. 185-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed July 15, 1982

*Dan Jerman,* Vermont Legal Aid, Rutland, for Plaintiff-Appellant.

*Matthew R. Gould,* Montpelier, for Defendant-Appellee.

**Underwood, J.** The claimant, a full-time college student, appeals a decision of the Vermont Employment Security Board upholding her disqualification from unemployment benefits because she was "unavailable for work within the meaning of our unemployment compensation statute."

The relevant statute provides:

> An unemployed individual shall be eligible to receive benefits with respect to any week only if the commissioner finds that:
>
> . . . .
>
> He is able to work, and is available for work; provided, that in determining the availability of any individual

with respect to any week, the commissioner may require, in addition to registration at any employment office, that the individual at any time make such other efforts to secure work as the commissioner may reasonably direct under the circumstances and to supply proper evidence thereof; and shall, if he fails without good cause to do so, be ineligible for each week such failure continues; . . . .

21 V.S.A. § 1343(a) (3).

■■ Ability to work and availability for suitable employment are two of the preconditions to eligibility for unemployment compensation benefits. 21 V.S.A. § 1343(a) (3); *Ellis* v. *Department of Employment Security,* 133 Vt. 533, 535, 346 A.2d 221, 222 (1975). The defendant bears the burden of establishing that she meets these two criteria. *Id.;* *In re Platt,* 130 Vt. 329, 331, 292 A.2d 822, 825 (1972); *Willard* v. *Vermont Unemployment Compensation Commission,* 122 Vt. 398, 403, 173 A.2d 843, 847 (1961). Ordinarily, the claimant can make a prima facie showing of availability for work by registering at an employment office and providing the department with evidence of compliance with "such other efforts to secure suitable work as the commissioner may reasonably direct." 21 V.S.A. § 1343(a)(3); *In re Prouty,* 131 Vt. 504, 507, 310 A.2d 12, 14 (1973).

■ When, however, "the claimant so limits [her] availability as to be tantamount to a refusal to accept suitable work, the burden is upon the claimant to show 'good cause' for such a refusal." *Id.* at 507–08, 310 A.2d at 15. But "the mere fact that a claimant places some restrictions on the type of work [s]he is willing to accept, does not necessarily make [her] unavailable for work in a disqualifying sense." *In re Platt, supra,* 130 Vt. at 333, 292 A.2d at 825. "[A] claimant will not be disqualified from receiving unemployment benefits when [s]he refuses to accept unsuitable employment." *Wallace* v. *Department of Employment Security,* 134 Vt. 513, 514, 365 A.2d 517, 518–19 (1976). In the last analysis, availability for work as prescribed by 21 V.S.A. § 1343(a) (3) is a factual question and must be decided on a case by case basis. *Carson* v. *Department of Employment Security,* 135 Vt. 312, 315, 376 A.2d 355, 357–58 (1977).

The Board found as a fact that the claimant had complied with the pertinent regulations, and acknowledged her testimony that school was secondary to work. It further noted the absence of any evidence "that any employers were inhibited from hiring her by her informing them that she was a full-time student, although, on occasion she expressed a preference for hours which happen not to conflict with her school hours and on some applications did note the fact that she was attending school." Despite these findings, however, the Board concluded:

> [W]e believe other evidence in the record amply rebuts the claimant's *prima facie* case of availability. . . .
>
> [I]rrespective of the claimant's compliance with the minimum standards imposed by the Department for establishing availability, we believe that the claimant's circumstances and actions compel the conclusion that she was not available for work.

The Board rested its conclusion on the "sum total" of four factors. Our review of each of the four, however, leaves us unable to find any sums to total. We take up each factor seriatim.

> 1. [T]he claimant failed to report her status to the local office when she knew that her full-time college attendance may have an impact upon her availability for work.

The claimant filled out a work registration form on April 29, 1980. One of the questions asked, "Did you attend school in the past 52 weeks or do you plan to attend school?" She checked the "yes" box, and indicated that she had completed one year of college. She testified that she could not recall being asked specifically about future plans, but stated that she would have described her plans for the next semester if asked. The Department representative, in what is either his statement or a leading question to the claimant, said:

> This form completed by the claimant on April 29 . . . stated, "Did you attend school in the past 52 weeks or do you plan to attend school?" The answer was "yes." Now, anytime you discuss that of course, they also discuss . . .

that in the future should you ever attend school, you should notify this office.

. . . .

This would indicate that this was discussed at that particular point and she was told to do so at that particular time.

Assuming arguendo that this statement constitutes evidence, a rather large assumption, it is evidence only that she was instructed to report future school attendance. It is not evidence that she did not do so later, during the summer, as she claims. Nor does it override the fact that, when specifically asked by an auditor, she reported school attendance, leading to the present proceedings.

■ Moreover, the Board's attribution of a motive to the nondisclosure was gratuitous and completely unsupported by the record. The claimant unequivocally denied that she was ever instructed that school attendance could affect her benefits. The Department presented no evidence to the contrary.

2. In addition, it appears that once the claimant commenced schooling in the fall of 1980, she began concentrating her work search efforts on obtaining retail sales work, in which she has no previous experience, because such work is performed during more nonschool hours than is the office work for which the claimant is qualified by experience.

■ The claimant's attempt to broaden her work search undermine, not support, the notion that she was not interested in work. The record demonstrates that she did not receive a single job referral from the Department. If her desire was to use unemployment benefits to finance her schooling, she could have continued to seek a type of work for which there was no demand. Moreover, she had originally stated that she was looking for "any full time" work, that she would be willing to accept "most anything," and would work for $3.10 an hour. Her search for retail work is perfectly consistent with those responses. The Department's rationale for thinking that she was bound to confine her efforts to secretarial and accounting work comes, not from her answer to queries about what she

was looking for, but in response to a question about her qualifications.

> 3. Moreover, the claimant's class schedule for both the fall 1980 and spring 1981 semesters prevented her from being available for significant portions of time during which both office and retail sales work is normally performed.

■ This finding is unsupported by the evidence. The only evidence in the record deals with when most office and retail sales work is performed, and what the claimant's class hours were. No evidence supports the proposition that school "prevented her from being available" for work. In fact, the claimant herself testified before the appeals referee that she would quit school altogether rather than forego a job offer, but she noted that she could rearrange her hours if she found a job. Moreover, her attorney, on appeal to the Board noted that he had failed to document her course flexibility as fully as he might, and requested the opportunity for a remand if the conflict of hours was a significant point in the Board's mind. He stated: "[E]vidence is available that every course she took she either could have taken it at a different hour—either at night or on weekends—or, she could have made arrangements with the professor for that course to pursue independent study."

> 4. Finally, the claimant while in student status, receives financial support through a welfare grant, and, therefore, she has a vested financial interest in continuing as a student.

■ The characterization of the claimant's financial aid as a "welfare" grant is without support in the record. Moreover, she has no more "vested financial interest" than any other student—and less than a student whose education has been financed by her own money, rather than a grant. In any event, allowing this one factor to support the Board's decision would amount to endorsing a per se rule against unemployment compensation benefits to all who have invested time and money in an education, something the Board claims it does not wish to do, and which it has no power to do. Individuals have

worked to support themselves while pursuing higher education as long as there have been colleges and universities.

Rather than permit per se rules, we have held, "the question of availability lends itself to resolution solely on a case by case basis, and that only when the facts peculiar to the claim under review 'deny the existence of *reasonable* availability' could benefits be refused." *Carson* v. *Department of Employment Security, supra,* 135 Vt. at 315, 376 A.2d at 357–58 (citation omitted).

The Board's reasons for denying benefits in this case, taken singly or together, are inadequate.

> "[T]he Unemployment Compensation Act, as remedial legislation, is to be interpreted in line with its benevolent objectives, and therefore no claimant should be excluded from its provisions unless the law clearly intends such an exclusion." The Act must be applied in a manner consistent with the stated purpose of removing the economic disabilities and distress resulting from involuntary unemployment.

*Porter* v. *Department of Employment Security,* 139 Vt. 405, 412, 430 A.2d 450, 454 (1981) (citations omitted).

*Reversed and remanded for computation of benefits.*