NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 31

No. 2017-257

| Louis F. LaFountain | Supreme Court |
| --- | --- |
| | |
| | On Appeal from |
| v. | Employment Security Board |
| | |
| | |
| Department of Labor | January Term, 2018 |
| (Eden General Store, Inc., Employer) | |


Michael Harrington, Chair

Louis F. LaFountain, Pro Se, Eden, Plaintiff-Appellant.

Dirk Anderson, Department of Labor, Montpelier, Defendant-Appellee.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1. **REIBER, C.J.** Claimant appeals pro se from the Employment Security Board's denial of his claim for unemployment compensation benefits. We conclude that the Board's findings do not support its conclusion, and we therefore reverse and remand for additional proceedings.

¶ 2. Claimant was employed as a store manager at the Eden General Store for three-and-a-half years. His last day of work was July 8, 2016. In late February 2017, claimant sought unemployment compensation benefits, and a claims adjudicator denied his request. The claims adjudicator found that claimant left his employment due to a certified health condition, which precluded the discharge of duties inherent in such employment. See 21 V.S.A. § 1344(a)(3)

(stating that claimant is disqualified for benefits "[f]or not more than six weeks nor less than one week immediately following the filing of a claim for benefits (in addition to the waiting period)," if claimant left job "without good cause attributable to" employer "because of a health condition, as certified by a health care provider . . . , which precludes the discharge of duties inherent in such employment"). She further found that claimant was currently unable to work and that he therefore was ineligible for unemployment compensation. See id. § 1343(a)(3) (stating that to be eligible for benefits, claimant must be "able to work" and be "available for work").

¶ 3.     Claimant appealed this decision to an administrative law judge (ALJ). Following a hearing, the ALJ made the following findings. Claimant has Chronic Obstructive Pulmonary Disease (COPD), which worsened during his last year of employment to the point that he had to reduce his hours to part-time and eventually stop working. Claimant needs a well-ventilated or purified-air environment to prevent exacerbation of his COPD. Claimant has been working with Vocational Rehabilitation (VocRehab) to explore part-time employment. Several months earlier, in late February 2017, claimant had applied for Social Security Disability Insurance (SSDI) benefits.

¶ 4.     The ALJ concluded that claimant was not able to work, and thus, he was ineligible for unemployment benefits. She cited the fact that claimant's COPD was exacerbated by movement unless he was in a well-ventilated or air-purified environment. She also noted that claimant's VocRehab specialist had not specifically identified any type of work that claimant could perform given his limitations. Finally, the ALJ reasoned that claimant was pursuing SSDI benefits and that to obtain such benefits, he had to certify that he could not work. Claimant appealed this decision, and following a hearing, the Board adopted the ALJ's findings and conclusions as its own. This appeal followed.

¶ 5.     Claimant challenges the Board's conclusion that he was not able and available to work. He maintains that the Board's findings do not support its conclusion. He notes that under

2

Vermont case law, actual job vacancies need not exist for him to be entitled to unemployment compensation. He also questions why his application for SSDI benefits should disqualify him from obtaining unemployment compensation. Claimant argues that the unemployment laws should be liberally construed to provide employees with a basic financial bridge to their next job. He contends that he can work part-time and that he is entitled to benefits.

¶ 6. The Board's decision is entitled to "great weight on appeal." Fleece on Earth v. Dep't of Emp't & Training, 2007 VT 29, ¶ 4, 181 Vt. 458, 923 A.2d 594 (quotation omitted). We will affirm the Board's factual findings unless they are clearly erroneous, and we will uphold its legal conclusions if they are reasonably supported by the findings. 863 To Go, Inc. v. Dep't of Labor, 2014 VT 61, ¶ 8, 196 Vt. 551, 99 A.3d 629. We agree with claimant that the Board's findings are deficient here.

¶ 7. At the outset, we emphasize that the purpose of the unemployment compensation law is not "to provide sick benefits nor to compensate those who cease working because of illness." Willard v. Vt. Unemployment Comp. Comm'n, 122 Vt. 398, 404, 173 A.2d 843, 847 (1961); see also Stryker v. Dep't of Emp't Sec., 134 Vt. 224, 226, 356 A.2d 534, 535 (1976) ("It is not the function of unemployment compensation to operate as disability benefits, provide pension benefits or perform the function of welfare payments."). Instead, the law is designed "to assist members of the working force who are made jobless by operations of the economy over which they have no individual control." Willard, 122 Vt. at 402, 292 A.2d at 846. As indicated above, an individual must be "able" and "available" to work to be entitled to receive benefits. 21 V.S.A. § 1343(a)(3); In re Platt, 130 Vt. 329, 332, 292 A.2d 822, 825 (1972). To be "available" to work, he or she must be "genuinely attached to the labor market." Willard, 122 Vt. at 402, 173 A.2d at 846 (quotation omitted).

¶ 8. We have explained that a "labor market for an individual exists when there is a market for the type of services which [claimant] offers in the geographical area in which [claimant]

3

offers them." Id. (quotation omitted). Claimant is correct that actual job vacancies need not exist for an individual to be entitled to benefits. See id. (explaining that term "market" as used above "does not mean that job vacancies must exist" as "purpose of unemployment compensation is to compensate for the lack of appropriate vacancies" (quotation omitted)). At the same time, however, claimant must identify particular employment services that he can offer and "establish the existence of a real and significant market" for these services "in the geographical area." Stryker, 134 Vt. at 226, 356 A.2d at 535 (citing Willard, 122 Vt. at 405, 173 A.2d at 843 for proposition "that one who limits his availability must, to be eligible for benefits, establish the existence of a real and significant market for the employment services he offers in the geographical area").

¶ 9.    The Board's findings do not adequately address these issues. Claimant testified that he wanted to work and that he could work part-time. Claimant stated that he had not been applying for any work but that he had been going to VocRehab every week and that his counselor was trying to match him up with a job that fit his needs.[1] Claimant believed that he could continue to do retail work as long as he was sitting down. He also stated that he could perform computer work, preferably from home. Claimant testified that he had experience working on his computer from home and that he was exploring this type of work with his VocRehab counselor. Claimant's VocRehab counselor did not testify at the hearing. Instead, claimant submitted a letter from her in which she stated that claimant was an active participant working with VocRehab and the Vermont Association of Business, Industry and Rehabilitation (VABIR) in exploring part-time employment. She found it apparent that claimant had a wide variety of transferrable skills that would be helpful in moving forward with his job search. Claimant's doctor also indicated that

---

[1]    The Department of Labor suggests that claimant should be disqualified because he was not actively seeking work and because he was looking for part-time work despite a history of full-time work. The Board did not make any findings to this effect, and it did not base its decision on either ground.

claimant could work as long as he engaged in limited lifting and was not exposed to pulmonary irritants.

¶ 10.   The Board's findings do not adequately address this evidence.  The Board simply found that claimant had physical limitations and that the VocRehab counselor had not specifically identified any type of work that claimant would be able to perform given his limitations.  This latter finding is apparently derived from the letter referenced above.  The counselor did not affirmatively state this fact, however; instead, she stated her belief that claimant had a variety of transferrable skills.[2]  Claimant testified that he could perform low-stress sedentary part-time work, such as working on the computer from home.  His doctor indicated that he could perform such work.  Even if the counselor had not yet identified particular jobs for which claimant could apply, it does not necessarily follow that claimant is unable and unavailable to work.  Because the Board's findings are inadequate to resolve the issue before it, its decision cannot stand.  See In re Dunn, 131 Vt. 261, 268, 305 A.2d 602, 606 (1973) (explaining that Board's decision must be reversed where Board's findings do not support its conclusions).

¶ 11.   The Board also cited the fact that claimant was pursuing SSDI benefits to support its conclusion that claimant was not able to work.  It asserted that to obtain such benefits, an applicant must certify that he or she cannot work.  The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). An individual's impairment must be "of such severity that he [or she] is not only unable to do his

---

[2]   In its brief, the Department asserts that claimant testified that he had been unable to identify any tangible suitable work opportunities.  We do not see such testimony in the record.  On the page identified by the Department, claimant stated that he had not been looking for work during the time that he was employed at the Eden General Store.  He went on to identify the type of work that he was currently looking to perform.

[or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." Id. § 423(d)(2)(A). "Despite this definition of disability, the SSDI program is administered so that eligibility for benefits does not automatically mean that an individual is unable to work." Huston v. Comm'r of Emp't & Econ. Dev., 672 N.W.2d 606, 609 (Minn. Ct. App. 2003) (citing Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999)). Claimant is correct that a person could earn a certain amount of money and still be eligible for SSDI benefits. See 20 C.F.R. § 416.974(b) (providing earnings guidelines for what constitutes "substantial gainful activity").

¶ 12. The Department of Labor acknowledges that claimant's application for SSDI benefits is a relevant, but not dispositive, factor in assessing his eligibility for unemployment compensation. Obviously, there is an inherent tension between the requirements for obtaining SSDI and obtaining unemployment compensation. One must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" to obtain SSDI, 42 U.S.C. § 423(d)(1)(A), and "able" and "available" to work to obtain unemployment compensation; 21 V.S.A. § 1344(a)(3). It is claimant's burden to show how he can satisfy the fundamental requirements of both programs at the same time. Cf. Willard, 122 Vt. at 401, 404-05, 173 A.2d at 846-48 (concluding, under prior version of law, that claimant's receipt of nonservice-connected disability pension from Veteran's Administration based on finding of "total and permanent disability and an inability to follow any gainful occupation" did not compel denial of unemployment compensation, but claimant must overcome presumption raised by pension application and "establish his physical ability to perform marketable employment and evidence the existence in the geographical area of a market for the services he was able to perform"); see also Cleveland, 526 U.S. at 802, 806-07 (concluding that application

6

and receipt of SSDI benefits and claim for disability discrimination under ADA did "not inherently conflict" to extent that application and receipt of SSDI benefits foreclosed ADA suit, but ADA plaintiff who has asserted "total disability" for SSDI purposes must provide sufficient explanation why, despite earlier statement, she could nonetheless "perform the essential functions of her job, with or without reasonable accommodation" (quotations omitted)).

¶ 13. The Board failed to grapple fully with this issue and explain why claimant's application alone, or in combination with the two other findings it cited, rendered claimant ineligible for unemployment benefits. Cf. Cleveland, 526 U.S. at 801, 802, 805 (noting, in case involving plaintiff alleging disability discrimination under ADA, which requires showing that disabled person can perform essential functions of job, that "if an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system"). Additionally, claimant stated before the Board in June 2017 that he was in fact receiving SSDI benefits, and that they had been made retroactive to an unspecified date. The Board could have directed the ALJ to take additional evidence on this point, but it did not do so. See 21 V.S.A. § 1349 (empowering Board to direct that additional evidence be taken). Additional evidence on this point will be required on remand.

¶ 14. If on remand the ALJ finds that claimant has been awarded SSDI benefits and that claimant qualifies for unemployment benefits, either retrospective or prospective, then the ALJ should consider whether an offset applies. See, e.g., Florence v. Dep't of Workforce Servs., 2001 UT App 323, ¶¶ 7, 10-11, 35 P.3d 1148 (concluding that "SSDI benefits fit the general definition of a 'pension' " and they "must be offset against unemployment benefits received for the same time period"); Va. Emp't Comm'n v. Nunery, 484 S.E.2d 609, 612 n.2, 613 (Va. Ct. App. 1997) (concluding that state unemployment benefits were subject to reduction or offset in amount of SSDI benefits received because SSDI benefits were "in the nature of retirement pay or pension payments and [were] based on the individual's previous employment," and stating that "[t]he

7

overwhelming majority of jurisdictions which have addressed the issue . . . have held that unemployment compensation benefits must be offset by the amount of Social Security benefits received where the base period employer contributed to the Social Security system" (citing cases)); see also Cericalo v. Indus. Claim Appeals Office, 114 P.3d 100, 101-03 (Colo. App. 2005) (concluding that claimant's unemployment benefits were properly offset by his SSDI benefits).

Reversed and remanded for additional proceedings consistent with this opinion.

FOR THE COURT:

_____

Chief Justice