685 So.2d 876 (1996)
Mary F. LEWIS, Appellant,
v.
LAKELAND HEALTH CARE CENTER, INC., and Florida Unemployment Appeals Commission, Appellees.
No. 95-03017.
District Court of Appeal of Florida, Second District.
November 6, 1996.
Steven Hitov, Florida Rural Legal Services, Inc., Lakeland, for Appellant.
William T. Moore, Unemployment Appeals Commission, Tallahassee, for Appellee Unemployment Appeals Commission.
ALTENBERND, Judge.
Mary F. Lewis appeals the order of the Unemployment Appeals Commission affirming the decision of the appeals referee that disqualified Ms. Lewis from receiving unemployment benefits. The referee found that Ms. Lewis voluntarily left her employment with Lakeland Health Care Center, Inc. (Lakeland Health), without good cause. We conclude that the Commission applied an incorrect rule of law by placing the burden on Ms. Lewis to prove she was not fired. Under the applicable statute, Ms. Lewis needed to establish only that she was "unemployed." § 443.091(1)(e), Fla.Stat. (1995). Before she had the additional obligation to prove "good *877 cause," Lakeland Health was required to establish that Ms. Lewis "left" or "quit." § 443.101, Fla.Stat. (1995). Ms. Lewis has consistently maintained that she was terminated, and there is no competent, substantial evidence in this record supporting a finding that she quit. Moreover, the referee failed to consider the family emergency exception, which permits a special type of "good cause" not factually attributable to the employing unit. See Dean v. Florida Unemployment Appeals Comm'n, 598 So.2d 100 (Fla. 2d DCA), review denied, 605 So.2d 1268 (Fla. 1992). Accordingly, we reverse the Commission's order and remand for further proceedings consistent with this opinion.

I. THE FACTS
Ms. Lewis was employed by Lakeland Health as a licensed practical nurse. In 1994, she worked the night shift from 11:00 p.m. to 7:30 a.m. Ms. Lewis is in her mid-sixties and has a married adult son. In December 1994, her son had a stroke and was hospitalized. Lakeland Health cooperated with Ms. Lewis and adjusted her hours so she could assist her son's wife in caring for him. In mid-February, her son's wife abandoned him, and Ms. Lewis became his sole caretaker. As a result, Ms. Lewis experienced increased stress and has admitted throughout these proceedings that she was not a reliable employee during this family crisis.
On February 14, 1995, Ms. Lewis was scheduled to work. She was unable to find alternate care for her son after his wife abandoned him. She called her supervisor, Ms. Anderson, and told her that she could not report to work as scheduled. The precise content of this critical telephone conversation is not well established in this record. There is no evidence that Ms. Lewis announced she was quitting during the telephone conversation. Ms. Lewis testified at the hearing that she was told that she was "terminated," but it is unclear from the record whether this occurred on February 14 or a few days later when she attempted to return to work after making arrangements for her son. Ms. Anderson did not testify.
It is undisputed that Ms. Lewis did not work after February 14. She filed a claim for unemployment benefits in March, stating that she had been discharged. Lakeland Health maintained that she had quit. Accordingly, the referee scheduled a hearing.
The hearing is not a model of clarity. Ms. Lewis was not represented by an attorney, and Lakeland Health sent a personnel manager who had no direct knowledge of her claim. Even from reading the transcript, it is clear that Ms. Lewis was nervous or confused. Despite her confusion, she explained to the claims examiner that she was fired. Ms. Lewis never testified that she quit. On one occasion the referee asked: "Okay, so then you had to quit all together then to stay home to take care of him?" Ms. Lewis answered: "Well, I couldn't show up and they told me I was unreliable." On another occasion when the employer's representative claimed that Ms. Lewis quit, Ms. Lewis interrupted to emphasize her position that she was terminated.
The company's personnel manager, who appeared at the hearing, had not been involved in the February events and could only provide a company "personnel action" document dated February 15, 1995, and signed by Ms. Anderson. It describes the personnel action as a "separation" and not a "warning." Among a standard list of issues warranting action on this form, Ms. Anderson checked "other," and wrote in "termination." However, she added a conflicting explanation: "employee quitno notice given." Although there is a place on this form for the employee's signature, Ms. Lewis did not sign the document. This, of course, is consistent with the explanation that the event occurred over the telephone.
The personnel manager testified that he deduced Ms. Lewis quit because Lakeland Health gave her no notice, and it normally gives notice when it fires someone. Because Lakeland Health assumed she quit, the personnel action form was never sent to her and she never had an opportunity to contest that document until the unemployment hearing.

*878 II. THE SHIFTING BURDEN OF PROOF IN AN UNEMPLOYMENT BENEFITS CASE
The analysis of this case depends upon whether Ms. Lewis was discharged or whether she voluntarily left her job. Since the employer did not allege or prove misconduct, Ms. Lewis would be entitled to benefits if she was discharged. On the other hand, if she voluntarily quit her job, she would be required to prove that she left for "good cause attributable to [her] employing unit." See § 443.101(1)(a), Fla.Stat. (1995). We conclude that the referee reached the good cause issue without adequate consideration of whether Ms. Lewis actually quit.
A careful reading of the record causes this court to suspect that, at the end of the telephone conversation, Ms. Anderson believed that Ms. Lewis had quit, and Ms. Lewis believed that she had been discharged. Neither the Commission nor this court can dispose of this case on our suspicions, especially in the absence of Ms. Anderson's testimony. Resolution of this issue hinges on whether the claimant had the initial burden to prove that the employer fired her or whether she was required to prove only that she was unemployed.
It is clear that an employee has the initial burden to prove she is eligible for unemployment benefits. In establishing eligibility, an employee does not need to prove that she was fired, but only that she is "unemployed." § 443.091(1)(e), Fla.Stat. (1995); Florida Indus. Comm'n v. Ciarlante, 84 So.2d 1 (Fla.1955); Newkirk v. Florida Indus. Comm'n, 142 So.2d 750 (Fla. 2d DCA 1962). In a case involving an employee's discharge, it is well settled that the employer has the burden to present evidence showing that the employee was discharged for misconduct. Tallahassee Housing Auth. v. Florida Unemployment Appeals Comm'n, 483 So.2d 413 (Fla.1986); Doyle v. Florida Unemployment Appeals Comm'n, 635 So.2d 1028 (Fla. 2d DCA 1994). We have found no Florida cases establishing which party has the burden of proof on the preliminary issue of whether an employee left her employment or whether she was discharged. The fact that an employee quits is in the nature of an affirmative defense, and it can usually be well documented by an employer. Given the public policy of, and the statutory requirement to liberally construe, chapter 443, we hold that the employer has the initial burden to establish that the employee voluntarily left the employment. See §§ 443.021, .031, Fla.Stat. (1995). See also Marz v. Department of Employ. Servs., 256 N.W.2d 287 (Minn.1977) (applying this shifting burden analysis under a similar unemployment compensation statute). If the employer meets this burden, then the employee must present evidence to prove that he or she left the employment for good cause attributable to the employer. See Brown v. Unemployment Appeals Comm'n, 633 So.2d 36 (Fla. 5th DCA), review denied, 642 So.2d 1362 (Fla.1994), cert. denied, ___ U.S. ___, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995); Marcelo v. Department of Labor & Employ. Sec., 453 So.2d 927 (Fla. 2d DCA 1984); Uniweld Products, Inc. v. Industrial Relations Comm'n, 277 So.2d 827 (Fla. 4th DCA 1973). Cf. Keays v. State of Florida Unemployment Appeals Comm'n, 592 So.2d 1255 (Fla. 2d DCA 1992) (holding that employer did not meet its burden of establishing claimant left her employment where employer failed to specify acceptable length of absence).
When applying this standard to the facts of this case, we must conclude that the statements upon which the referee relied simply do not provide prima facie evidence to support the finding that Ms. Lewis quit. The referee did not rely on the internally contradictory hearsay in the personnel action form. The referee could not have relied on Ms. Anderson because she did not testify. Nothing in Ms. Lewis's testimony establishes her intent to quit on February 14. The record does not contain evidence of any statement by her during the telephone call that Ms. Anderson could reasonably have understood as "I quit." Accordingly, we hold that the employer failed to meet its initial burden of proving that Ms. Lewis voluntarily left her employment.
Because it is obvious that the appeals referee was confused about the burden of proof and thus did not conduct the hearing in such a manner as to permit the parties to *879 establish their respective cases, we decline to order the payment of unemployment benefits to Ms. Lewis as a result of this reversal. Instead, we reverse the Commission's affirmance and remand the case to the appeals referee with directions to conduct a new hearing using the above-stated burdens of proof. § 120.68(9)(b), Fla.Stat. (1995). See also Sheriff of Monroe County v. Unemployment Appeals Comm'n, 490 So.2d 961 (Fla. 3d DCA) (remanding case for new hearing where law was unclear at time of initial hearing and sheriff was affirmatively misled by unemployment appeals pamphlet), review denied, 500 So.2d 544 (Fla.1986).

III. THE FAMILY EMERGENCY EXCEPTION
On remand, if the referee finds that Ms. Lewis quit, then the issue of good cause must be revisited. The referee focused on the issue of good cause "attributable to the employing unit." Even though an illness is not factually attributable to one's employer, the law permits an "illness or disability of the individual requiring separation from his [or her] work" to be a good cause for voluntarily leaving a job. See § 443.101(1)(a)(1), Fla. Stat. (1995). Courts have extended this statute to authorize a "family emergency" in the nature of an illness or disability to be good cause for leaving a job in some circumstances. See, e.g., Dean v. Florida Unemployment Appeals Comm'n, 598 So.2d 100 (Fla. 2d DCA) (claimant who was unable to arrange supervision for her child with chicken pox left for good cause), review denied, 605 So.2d 1268 (Fla.1992); Gadsden v. Florida Unemployment Appeals Comm'n, 616 So.2d 1196 (Fla. 2d DCA 1993) (claimant left her position with good cause to care for her father who had brain tumor). As explained in Dean, "[t]he determination of whether an employee voluntarily leaves a job without good cause attributable to an employer should focus on whether the circumstances behind the employee's departure would have impelled the average, able-minded, qualified worker to give up his employment." 598 So.2d at 101.
The referee in Ms. Lewis's case concluded: "Although the claimant may have had good cause to voluntarily leave this employment, it has not been established that the leaving was with good cause attributable to the employer by a preponderance of evidence in the record " (emphasis added). While we agree that the employer did not create Ms. Lewis's family crisis, the record strongly suggests that the referee was unfamiliar with the test in Dean and did not consider the family emergency exception. Certainly, the referee did not ask the questions necessary for Ms. Lewis to prove her burden on this issue, even though it is clear from the record that this layperson was attempting to rely, in part, upon that exception. Given the format of this type of administrative hearing, it is unlikely that an unrepresented claimant such as Ms. Lewis could ever prove the family emergency exception without sufficient questioning by the referee. Thus, just as the referee should revisit the issue of Ms. Lewis's separation from employment in fairness to Lakeland Health, we conclude that the family emergency exception should be more fully examined in fairness to Ms. Lewis.
Reversed and remanded for further proceedings with directions.
PARKER, A.C.J., and QUINCE, J., concur.