927 So.2d 127 (2006)
David W. WOOD, Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION, Appellee.
No. 2D05-2941.
District Court of Appeal of Florida, Second District.
April 19, 2006.
Michelle Trunkett of Florida Rural Legal Services, Fort Myers, for Appellant.
Geri Atkinson-Hazelton, General Counsel, and Louis A. Gutierrez, Senior Attorney, Unemployment Appeals Commission, Tallahassee, for Appellee Unemployment Appeals Commission.
ALTENBERND, Judge.
David Wood appeals an order of the Unemployment Appeals Commission (UAC) affirming the determination of an appeals referee that he was disqualified from receiving unemployment benefits because he voluntarily left his employment with Youngquist Brothers, Inc. This case appears to be the result of a miscommunication between employer and employee similar to the one described in Lewis v. Lakeland Health Care Center, Inc., 685 So.2d 876 (Fla. 2d DCA 1996). Mr. Wood apparently believed he had been discharged in connection with a workers' compensation claim. At least some of the employer's representatives believed he had voluntarily declined to return to work for no stated reason. Because the employer failed to present competent, substantial evidence that Mr. Wood voluntarily left his employment, and thus this finding by the appeals referee is not supported by the record, we reverse.
Mr. Wood was employed by Youngquist Brothers as a full-time shop laborer and welder from the fall of 2002 until the summer of 2004. On May 28, 2004, Mr. Wood received a serious insect bite while on the job. The bite became infected and required surgery. Beginning in June 2004, Mr. Wood had to take a medical leave of absence and the matter was referred to Youngquist Brothers' workers' compensation carrier. During Mr. Wood's leave of absence, it appears that he and Youngquist Brothers had little direct contact and that *128 both of them communicated with or through a workers' compensation claims adjustor.
From the documents that Mr. Wood introduced into evidence before the appeals referee, it appears undisputed that Mr. Wood's treating physician saw him on August 12, 2004, observed that he still had some soreness in the area of the wound but determined that he was well enough to return to work on September 6, 2004. The doctor wanted to examine Mr. Wood on September 7 after a day's work, "for one last check prior to his release." Although the record suggests that the workers' compensation adjustor received this report, it is unclear whether anyone at Youngquist Brothers had received it.
At the hearing before the appeals referee, Youngquist Brothers was represented by a human resources representative who does not appear to have ever had any direct contact with Mr. Wood. The human resources representative testified that she had received a copy of a form from the insurance company stating that Mr. Wood was released to return to work on August 12. The form is not in our record, and there was no medical testimony at this hearing. There was no evidence that Mr. Wood received a copy of this form or that the employer told him to report to work on August 12 in violation of his treating physician's medical directions. Mr. Wood believes that the workers' compensation adjustor was confused about the date, August 12, which was the date of the examination when his physician told him that he was not yet ready to return to work. In turn, it appears that management at Youngquist Brothers was confused about the date of Mr. Wood's release, having not received the report from Mr. Wood's treating physician setting the return date of September 6, and thus possibly expected Mr. Wood to return to work in mid-August.
It is undisputed that on the Saturday preceding September 6, Mr. Wood went to his jobsite. He testified that he talked to Mr. McCullers, a company vice president. The vice president was uncertain whether Mr. Wood had been released to come back to work by the workers' compensation adjustor. This person did not testify at the hearing. According to Mr. Wood, Mr. McCullers also asked Mr. Wood to return his uniforms to the company due to some accounting issue with the company that provided Youngquist Brothers the uniforms. Mr. Wood returned the uniforms as instructed. This apparently led a co-worker who testified at the hearing to conclude that Mr. Wood had voluntarily left his employment, although Mr. Wood did not tell the coworker or anyone else that he was not returning to work.
After speaking with Mr. McCullers, Mr. Wood called the workers' compensation adjustor about obtaining the clearance necessary to return to work. The representative told Mr. Wood that he had lost his job when he failed to return to work in mid-August and that there was nothing that could be done about it. According to Mr. Wood, the adjustor urged him to accept a settlement for the injury and sign a voluntary resignation form. He refused. Mr. Wood testified he continued to try to contact Mr. McCullers to determine when he could return to work but was consistently told that the vice president did not know whether Mr. Wood could return to the job.
In October, Mr. Wood, unable to get a straight answer, gave up and sought unemployment benefits. On his application, he specifically indicated that he was discharged by Tim McCullers due to tension over the workers' compensation claim and issues as to when he would return to work. When a claims examiner made an initial determination that Mr. Wood was entitled to unemployment benefits, Youngquist *129 Brothers appealed the decision, asserting that "Mr. Wood voluntarily quit employment. . . for unknown reasons." Thus, the issues were properly framed for the appeals referee, and the evidentiary hearing specifically involved whether Mr. Wood was fired or abandoned his employment.
After the evidentiary hearing, the appeals referee concluded:
The testimony presented at this hearing clearly shows that the employer had no intention of discharging the claimant and took no actions that would lead to that end. Under these circumstances, it is concluded that the claimant quit.
The situation presented here is similar to that presented in Lewis, 685 So.2d 876. In Lewis, the employee testified that when she called a supervisor on the telephone to tell the supervisor that she could not report to work that day, she was terminated. A representative of the employer, however, was under the impression that the employee had quit her job during the telephone conversation.
This court explained:
It is clear that an employee has the initial burden to prove she is eligible for unemployment benefits. In establishing eligibility, an employee does not need to prove that she was fired, but only that she is "unemployed." § 443.091(1)(e), Fla. Stat. (1995); Florida Indus. Comm'n v. Ciarlante, 84 So.2d 1 (Fla. 1955); Newkirk v. Florida Indus. Comm'n, 142 So.2d 750 (Fla. 2d DCA 1962). . . . The fact that an employee quits is in the nature of an affirmative defense, and it can usually be well documented by an employer. Given the public policy of, and the statutory requirement to liberally construe, chapter 443, we hold that the employer has the initial burden to establish that the employee voluntarily left the employment. See §§ 443.021, .031, Fla. Stat. (1995). See also Marz v. Department of Employ. Servs., 256 N.W.2d 287 (Minn.1977) (applying this shifting burden analysis under a similar unemployment compensation statute). If the employer meets this burden, then the employee must present evidence to prove that he or she left the employment for good cause attributable to the employer. See Brown v. Unemployment Appeals Comm'n, 633 So.2d 36 (Fla. 5th DCA), review denied, 642 So.2d 1362 (Fla.1994), cert. denied, 513 U.S. 1082, 115 S.Ct. 733, 130 L.Ed.2d 636 (1995); Marcelo v. Department of Labor & Employ. Sec., 453 So.2d 927 (Fla. 2d DCA 1984); Uniweld Products, Inc. v. Industrial Relations Comm'n, 277 So.2d 827 (Fla. 4th DCA 1973).
Id. at 878. We noted in Lewis that it was possible that Lewis's separation from her employment was simply the result of a miscommunication. What that miscommunication established, however, depended upon who had the burden of proving whether the claimant quit her employment. Id. Because the employer had the burden of proof, the miscommunication itself was not prima facie evidence that Lewis quit. Id.
In this case, as in Lewis, there was no direct evidence that Mr. Wood ever said he quit or that he ever intended to do so. The appeals referee seems to have confused the burden of proof in this matter. Rather than reviewing the evidence presented to determine whether the employer established that Mr. Wood quit his job, the appeals referee looked to whether Mr. Wood presented evidence that the employer intended to or did terminate his employment.
If Youngquist Brothers intended to establish that Mr. Wood quit his employment, it needed to present evidence that Mr. Wood was cleared to return to work, *130 knew that he was cleared to return, and thereafter did not return of his own volition. The employer failed to present this evidence. The employer acknowledged that Mr. Wood was placed on medical leave in June. Thus, Mr. Wood was still employed by Youngquist Brothers but could not return to active status until authorized by Youngquist Brothers. Despite the undisputed testimony that Mr. Wood inquired about returning to his employment, no one at Youngquist Brothers ever told him he was permitted to return to work. Indeed, it appears the workers' compensation adjustor may have told him he could not return to work. After a month had elapsed from the time that Mr. Wood's doctor had stated he could return to work and Mr. Wood had informed his employer of his willingness to do so, it was certainly reasonable for Mr. Wood to assume that he had been fired.
There was no competent, substantial evidence to support the appeals referee's finding that Mr. Wood voluntarily left his employment with Youngquist Brothers. We reverse the order disqualifying Mr. Wood from receiving unemployment benefits. Because the employer knew that this issue was to be addressed at the hearing before the appeals referee yet failed to carry its burden of proof on this issue, we remand with directions to award Mr. Wood unemployment benefits.
Reversed.
DAVIS and WALLACE, JJ., Concur.