**Jerry Trapeni, et al. v. Department of Employment Security**

[455 A.2d 329]

No. 515-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed December 8, 1982

*M. Jerome Diamond* and *Ronald A. Fox* of *Diamond, Fox & Associates, P.C.*, Montpelier, for Plaintiffs-Appellees.

*Thomas M. Dowling* and *Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

**Underwood, J.** In a case of first impression we are called upon to construe the labor dispute disqualification provision, 21 V.S.A. § 1344(a)(4), and the voluntary leave disqualification provision, 21 V.S.A. § 1344(a)(2)(A), of the Unemployment Compensation Act. This dispute arises from the granting of unemployment benefits to striking workers of the Herald Association, Inc., publisher of the *Rutland Daily Herald* (hereinafter the Herald). In spite of the strike, the Herald was able to publish its newspaper on a daily basis with no substantial curtailment of its operations.

The case involves 21 claimants, members of Local No. 303 of the International Printing and Graphic Union, who went on strike against the Herald on October 3, 1980. The claimants filed for and received benefits while on strike. The Herald appealed from the ruling of the chief claims examiner and thereafter from adverse rulings of the appeals referee and the Employment Security Board.

Two issues are raised by this appeal: (1) whether the labor dispute disqualification applies to disqualify the striking claimants when there was no substantial curtailment of the employer's operations as a result of the strike; and (2) whether the voluntary leave disqualification applies to disqualify the striking claimants. The Board had determined that neither disqualification applied to the facts of this case. The Herald now argues on appeal that the Board's conclusions are wrong as a matter of law. We disagree and affirm.

I.

21 V.S.A. § 1344(a)(4) provides:

(a) An individual shall be disqualified for benefits:

(4) For any week with respect to which the commissioner finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed, provided that this division shall not apply if he is not participating in or

financing or directly interested in the labor dispute which caused the stoppage of work.

The Herald contends that the phrase "stoppage of work" in this provision refers to the cessation of work by the employees. Therefore, it argues, that since the claimants' unemployment was due to their stopping work because of a labor dispute, the award of unemployment compensation benefits to them was improper. The Board rejected this interpretation of the phrase and held that "stoppage of work" refers to a curtailment of the employer's operations. It held that since the operations of the Herald continued despite the strike, 21 V.S.A. § 1344(a)(4) did not disqualify the claimants from receiving benefits. We agree with the latter.

 21 V.S.A. § 1344(a)(4) was patterned after a provision in the federal Social Security Draft Bill for unemployment compensation prepared by the Committee on Economic Security in 1936, as were the labor dispute disqualification provisions of similar statutes in thirty-three other states. See Shadur, *Unemployment Benefits and the "Labor Dispute" Disqualification*, 17 U. Chi. L. Rev. 294, 294–95 (1950). Of these thirty-three states, twenty-three have interpreted the phrase "stoppage of work." Twenty-two of these states have held that the phrase refers not to work of the claimant employees, but to the operations of the employer.[1] Only the Supreme Court of Oklahoma has held otherwise,[2] and that

---

[1] See *Sakrison v. Pierce*, 66 Ariz. 162, 168, 185 P.2d 528, 532 (1947); *Monsanto Chemical Co. v. Commissioner of Labor*, 229 Ark. 362, 364, 314 S.W.2d 493, 495 (1958); *M. A. Ferst, Ltd. v. Huiet*, 78 Ga. App. 855, 858, 52 S.E.2d 336, 339 (1949); *Inter-Island Resorts, Ltd. v. Akahane*, 46 Hawaii 140, 148, 377 P.2d 715, 720 (1962); *Totorico v. Western Equipment Co.*, 88 Idaho 534, 541, 401 P.2d 817, 821 (1965); *Robert S. Abbott Publishing Co. v. Annunzio*, 414 Ill. 559, 569, 112 N.E.2d 101, 106 (1953); *Carnegie-Illinois Steel Corp. v. Review Board*, 117 Ind. App. 379, 391, 72 N.E.2d 662, 667 (1947); *Pickman v. Weltmer*, 191 Kan. 543, 548, 382 P.2d 298, 303 (1963) (by implication); *Bilodeau v. Maine Employment Security Commission*, 153 Me. 254, 260, 136 A.2d 522, 526 (1957); *Saunders v. Maryland Unemployment Compensation Board*, 188 Md. 677, 53 A.2d 579 (1947); *General Electric Co. v. Director of the Division of Employment Security*, 349 Mass. 358, 363, 208 N.E.2d 234, 237 (1965); *Westinghouse Broadcasting Co. v. Director of the Division of Employment Security*, 378 Mass. 51, 54,

"decision has been subjected to severe criticism, and that state's statute was amended in conformity with the majority construction after the opinion was rendered." *Employment Security Administration* v. *Browning-Ferris, Inc.*, 292 Md. 515, 524, 438 A.2d 1356, 1361 (1982). It is significant that the overwhelming weight of authority supports the Board's construction of "stoppage of work." As we stated in *Willard* v. *Vermont Unemployment Compensation Commission*, 122 Vt. 398, 173 A.2d 843 (1961), "[s]ince all state statutes [concerning unemployment compensation] were inspired by federal enabling legislation and drafted with an eye to uniformity, views of other courts on the meaning of such statutory language are helpful." *Id.* at 402, 173 A.2d at 846.

Even without the compelling weight of precedent, we are convinced that the phrase "stoppage of work" in 21 V.S.A. § 1344(a)(4) refers to the effect upon the employer's operations. The Vermont legislature had an opportunity in 1982 to totally eliminate the possibility of a striking employee qualifying for unemployment benefits by deleting the phrase "stoppage of work" from 21 V.S.A. § 1344(a)(4). The instant case was given broad statewide attention by the media. The legislature was clearly aware of the view expressed by the Board in this case, as well as in an earlier case, that "stop-

389 N.E.2d 410, 412 (1979); *Lawrence Baking Co.* v. *Michigan Unemployment Compensation Commission*, 308 Mich. 198, 207, 13 N.W.2d 260, 263 (1944); *Producers Produce Co.* v. *Industrial Commission*, 365 Mo. 996, 1005, 291 S.W.2d 166, 171 (1956); *Continental Oil Co.* v. *Board of Labor Appeals*, 178 Mont. 143, 148, 582 P.2d 1236, 1240 (1978); *Magner* v. *Kinney*, 141 Neb. 122, 129, 2 N.W.2d 689, 693 (1942); *Legacy* v. *Clarostat Manufacturing Co.*, 99 N.H. 483, 486, 115 A.2d 424, 426 (1955); *Ablondi* v. *Board of Review*, 8 N.J. Super. 71, 76, 73 A.2d 262, 265 (1950); *Albuquerque-Phoenix Express, Inc.* v. *Employment Security Commission*, 88 N.M. 596, 600, 544 P.2d 1161, 1165 (1975); *In re Steelman*, 219 N.C. 306, 312, 13 S.E.2d 544, 548 (1941); *Fontaine* v. *Board of Review*, 100 R.I. 37, 44, 210 A.2d 867, 871 (1965); *Shell Oil Co.* v. *Brooks*, 88 Wash. 2d 909, 912, 567 P.2d 1132, 1134 (1977); *Cumberland & Allegheny Gas Co.* v. *Hatcher*, 147 W. Va. 630, 638, 130 S.E.2d 115, 120 (1963).

[2] See *Board of Review* v. *Mid-Continent Petroleum Corp.*, 193 Okla. 36, 39, 141 P.2d 69, 71 (1943).

page of work" refers to the employer's business. However, the legislature chose not to act, and thus expressed its intent to leave the labor dispute disqualification intact and to adopt the administrative construction given to the statute. See *Governor Clinton Council, Inc.* v. *Koslowski*, 137 Vt. 240, 247, 403 A.2d 689, 694 (1979) (citing *Scott* v. *St. Johnsbury Academy*, 86 Vt. 172, 175, 84 A. 567, 568 (1912)); 2 Am. Jur. 2d *Administrative Law* § 252.

Finally, we note that it is a fundamental principle of statutory construction in Vermont that if possible every word, clause, and sentence within a statute will be given effect. *State* v. *Tierney*, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) (citing *State* v. *Mahoney*, 122 Vt. 456, 459, 176 A.2d 747, 749 (1961)). Were the phrase "stoppage of work" to refer to the cessation of work on the part of the employee, it would be redundant in the sentence "his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute . . . ." 21 V.S.A. § 1344(a)(4). Such an interpretation would render the phrase meaningless, since the statutory sentence has already mentioned "unemployment" (which always involves a stoppage of work by the employee[3]) and presupposes the existence of that condition. *Employment Security Administration* v. *Browning-Ferris, Inc., supra,* 292 Md. at 524–25, 438 A.2d at 1362; *Albuquerque-Phoenix Express, Inc.* v. *Employment Security Commission, supra,* 88 N.M. at 601, 544 P.2d at 1166; *Monsanto Chemical Co.* v. *Commissioner of Labor, supra,* 229 Ark. at 364, 314 S.W.2d at 495. Only by construing "stoppage of work" to refer to the curtailment of the employer's operations do we give full effect to every word and clause of 21 V.S.A. § 1344(a)(4).

For all of the foregoing reasons, we hold that the phrase "stoppage of work" in 21 V.S.A. § 1344(a)(4) refers to a curtailment of the employer's operations and, therefore, we affirm the Board's ruling that this statute does not disqualify the claimants from unemployment benefits.

---

[3] 21 V.S.A. § 1301(9)(A) provides:

An individual shall be deemed "totally unemployed" in any week during which he performs no services and with respect to which no wages are earned by him.

## II.

21 V.S.A. § 1344(a) (2) (A) provides:

(a) An individual shall be disqualified for benefits:

. . . .

(2) For any week benefits are claimed . . . if the commissioner finds that such individual is unemployed because:

(A) He has left the employ of his last employing unit voluntarily without good cause attributable to such employing unit.

The Herald contends that each claimant, in going out on strike, voluntarily left work without good cause attributable to his employer and is therefore disqualified for unemployment benefits under this provision. We reject this contention.

■ The voluntary leaving disqualification is found in the same statute containing the labor dispute disqualification, 21 V.S.A. § 1344(a) (4). Under the rule of statutory construction —that every provision of a statute must be given effect if possible, *State* v. *Tierney, supra,* 138 Vt. at 165, 412 A.2d at 299—we must conclude that the legislature did not intend these subsections to be duplicative. Rather, it must have intended that a person who left work because of a labor dispute be treated differently than one who left for other reasons and without good cause attributable to the employer. See *Employment Security Administration* v. *Browning-Ferris, Inc., supra,* 292 Md. at 525, 438 A.2d at 1362.

This view is supported by the Hawaii Supreme Court, in its analysis of similar statutes, in *Inter-Island Resorts, Ltd.* v. *Akahane, supra,* 46 Hawaii at 156, 377 P.2d at 724.

This argument [that claimants unemployed as a result of a labor dispute are voluntarily unemployed] is in direct conflict with the generally accepted interpretation of the voluntary leaving and the labor dispute disqualification provisions of the various state laws. The consensus supports the conclusion that the two disqualification provisions are mutually exclusive and that an individual

whose unemployment is due to a "stoppage of work" which exists because of a "labor dispute" cannot be said to have "left his work voluntarily" within the meaning of the voluntary separation provisions. *T. R. Miller Mill Co.* v. *Johns,* 261 Ala. 615, 75 So.2d 675; *Intertown Corp.* v. *Appeal Board of Mich. Unemployment Comp. Comm.,* *supra,* 328 Mich. 363, 43 N.W.2d 888; *Little Rock Furniture Mfg. Co.* v. *Commissioner of Labor,* 227 Ark. 288, 298 S.W.2d 56; *Marathon Electric Mfg. Corp.* v. *Industrial Comm.,* 269 Wis. 394, 69 N.W.2d 573, 70 N.W.2d 576. Lesser, *Labor Dispute and Unemployment Compensation,* 55 Yale Law Journal 167.

Even if we assume that the labor dispute disqualification and the voluntary leaving disqualification are not mutually exclusive, the latter is still not applicable to strikers for the following reason.

■ Before the voluntary leaving disqualification comes into play, it must first be established that the claimant "left the employ of his last employing unit." The term "left the employ" as used in 21 V.S.A. § 1344(a)(2)(A) refers only to a severance of the employment relationship and does not include a temporary interruption in the performance of services. Kempfer, *Disqualifications for Voluntary Leaving and Misconduct,* 55 Yale L.J. 147 (1945). A complete and bona fide severance of the employer-employee relationship does not occur in a labor dispute case, for participation in a strike merely suspends that relationship, it does not terminate it. *LaFountain* v. *Vermont Employment Security Board,* 133 Vt. 42, 46–47, 330 A.2d 468, 471 (1974) (citing *In re Hatch,* 130 Vt. 248, 290 A.2d 180 (1972)). Thus, the voluntary leaving disqualification has no application to strikers. See *Continental Oil Co.* v. *Board of Labor Appeals, supra,* 178 Mont. 143, 151–52, 582 P.2d 1236, 1241–42 (1978); *Albuquerque-Phoenix Express, Inc.* v. *Employment Security Commission, supra,* 88 N.M. at 599–600, 544 P.2d at 1164–65; *Totorica* v. *Western Equipment Co., supra,* 88 Idaho at 542, 401 P.2d at 821; *Inter-Island Resorts, Ltd.* v. *Akahane, supra,* 46 Hawaii at 156–58, 377 P.2d at 724–25, and cases cited therein.

■ Having resolved both issues in favor of the claimants, we hold that the award of unemployment compensation benefits was proper, and we affirm the decision of the Board.

*Affirmed.*