2011 VT 84

# Katrina Blue v. Department of Labor and Hickok & Boardman Realty, Inc.

[27 A.3d 1096]

No. 11-051

Present: Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.

Opinion Filed July 28, 2011

*James W. Runcie* of *Ouimette & Runcie*, Vergennes, for Claimant-Appellant.

*Kerin E. Stackpole* of *Bergeron, Paradis & Fitzpatrick, LLP*, Burlington, for Respondent-Appellee.

¶ 1. **Johnson, J.** Claimant Katrina Blue appeals from an Employment Security Board decision denying her claim for unemployment compensation benefits. Claimant contends the Board erred in: (1) finding that she was disqualified from receiving benefits because she left her employment voluntarily; and (2) assigning her the burden of proof. We reverse and remand.

¶ 2. Claimant worked for about four years for Hickok & Boardman Realty. In the early summer of 2010, claimant left her employment to participate in a three-month cross-country bicycle ride for multiple sclerosis in honor of her father, who had died from the disease in 2006. The circumstances of her leaving was the principal subject of dispute below. Claimant testified that she asked her supervisor for a three-month unpaid leave of absence and that her supervisor granted the request and agreed that claimant could return to her position on September 1, 2010. Claimant also testified that, in the expectation of returning, she left a number of personal belongings in her office, including photographs and a nameplate, although she acknowledged that she received a check for accrued vacation time when she left and chose not to continue her health benefits. Claimant also acknowledged that she did not submit a written request for leave, as required in the company's personnel policy, which states that employees who apply for unpaid personal leave "must apply in writing" and that "reinstatement is not guaranteed" but rather "at the Company's sole discretion." While thus conceding that her leave arrangement "was not typical," claimant maintained that her supervisor had agreed "that an exception would be made in this instance."

¶ 3. Claimant's supervisor remembered matters differently. She testified that claimant asked for the leave about a year in advance, in June 2009, and was told at the time that "it was going to be very difficult" because summer was a busy time of year and further that "leaves of absence weren't part of our practice." According to the supervisor, claimant did not renew the request but instead left on the bicycle trip without a formal leave of absence and with no promise of a job on her return. The supervisor acknowledged that claimant's name remained on the company's website and that her log-in and password remained active through the summer that she was away.

¶ 4. There is no dispute that employer hired several people to perform claimant's work functions during her absence, two interns

and one temporary part-time employee. Nor is it disputed that, when claimant returned to Vermont in late August 2010 and contacted her employer about returning to work, she was informed that the part-time employee had been hired on a fulltime basis to replace her. The only other witness, a former employee of Hickok & Boardman, recalled that other employees in the office "believed that [claimant] was . . . taking a leave of absence from her employment, and coming back, and her job was there waiting for her." She specifically recalled claimant's supervisor stating that claimant would be back on September 1.

¶ 5. In its ruling, the ALJ's sparse findings indicate that claimant "requested a three-month leave of absence" but do not state whether the request was granted or, if so, on what terms. Its key conclusion, however, is that "[w]hile the claimant maintains that she was fired when the employer would not allow her to come back from a personal leave of absence, it was the claimant who initiated the separation from employment by requesting the leave of absence . . . thus making this a voluntary separation from employment." Since there was no claim that the separation was for "good cause attributable" to the employer, the ALJ concluded that claimant was disqualified from receiving benefits. See 21 V.S.A. § 1344(a)(2)(A) (providing that an individual shall be disqualified from benefits where he or she "has left the employ of his or her last employing unit voluntarily without good cause attributable to such employing unit"). In a divided ruling, the Employment Security Board adopted the ALJ's findings and conclusions and sustained its decision. The dissenting member of the Board would have found that claimant's "departure for her cross-country ride was . . . not a voluntary abandonment of her employment, but a temporary unpaid leave of absence," that claimant was let go upon her return in late August, and therefore that she was entitled to unemployment compensation benefits from that time forward. This appeal followed.

¶ 6. Our review of Board decisions is limited. We will uphold its factual findings unless clearly erroneous, and its conclusions if reasonably supported by the findings. *Bouchard v. Dep't of Emp't & Training*, 174 Vt. 588, 589, 816 A.2d 508, 510 (2002) (mem.). We will also generally defer to its interpretations of the statutes it is charged with administering, while mindful that they "must be construed liberally in favor of claimants" to compensate employees laid off involuntarily through no fault of their own. *Howard v*

*Dep't of Emp't & Training*, 153 Vt. 614, 616, 572 A.2d 931, 932 (1990).

■ ¶ 7. "The claimant has the burden of showing his initial eligibility for benefits." *In re Therrien*, 132 Vt. 535, 537, 325 A.2d 357, 358 (1974). Once the claimant has established the basic elements of employment and termination, however, many courts have held — consistent with the broadly remedial nature of the unemployment compensation scheme — that a termination "is presumed to be involuntary unless the employer fulfills its burden of proving the employee left voluntarily." *Berkley v. D.C. Transit, Inc.*, 950 A.2d 749, 757 (D.C. 2008) (quotation omitted); see, e.g., *Green v. D.C. Dep't of Emp't Servs.*, 499 A.2d 870, 874-76 (D.C. 1985) (holding that presumption of involuntariness comports with rule that unemployment statute must be construed liberally to accomplish legislative objective of minimizing economic burden of unemployment); *Lewis v. Lakeland Health Care Ctr., Inc.*, 685 So. 2d 876, 878 (Fla. Dist. Ct. App. 1996) ("Given the public policy of, and the statutory requirement to liberally construe [unemployment statute], we hold that the employer has the initial burden to establish that the employee voluntarily left the employment."); *Wiese v. Iowa Dep't of Job Serv.*, 389 N.W.2d 676, 679 (Iowa 1986) (interpreting agency rule providing that "the burden of proof is upon the employer to establish that the separation was a voluntary leaving of employment") (quotation omitted); *Souder v. Ziegler, Inc.*, 424 N.W.2d 834, 836 (Minn. Ct. App. 1988) ("The employer has the burden of proving the employee voluntarily quit his employment."); *In re Johnson*, 337 N.W.2d 442, 446 (S.D. 1983) (holding that employer had burden of proving employee voluntarily quit and therefore was ineligible for benefits); *Chauncey F. Hutter, Inc. v. Va. Emp't Comm'n*, 652 S.E.2d 151, 154 (Va. Ct. App. 2007) ("[T]he burden is on the employer to prove that the claimant left work voluntarily.") (quotation omitted); *Holy Name Sch. v. Dep't of Indus., Labor & Human Relations*, 326 N.W.2d 121, 125 (Wis. Ct. App. 1982) (holding that law presumes employee was not disqualified from unemployment benefits).

■ ¶ 8. Once the employer has shown a voluntary departure, however, the burden is generally on the employee to prove that he or she quit for good cause attributable to the employer. See, e.g., *Berkley*, 950 A.2d at 761 (where employer proves that termination was voluntary, employee must prove that she left "for good

cause"); *Borakove v. Fla. Unemployment Appeals Comm'n*, 14 So. 3d 249, 251 (Fla. Dist. Ct. App. 2009) (once employer has met "the initial burden to establish that the employee voluntarily left employment . . . then the employee must present evidence to prove that he or she left the employment for good cause attributable to the employer" (quotation omitted)); *Marz v. Dep't of Emp't Servs.*, 256 N.W.2d 287, 289 (Minn. 1977) (holding that once employer has sustained burden of "showing the employee has voluntarily left his employment . . . [t]he burden then shifts to the employee to show good cause attributable to the employer for leaving").

¶ 9. Although this approach is not employed everywhere, see, e.g., *Carlisle v. Dir., Dep't of Indus. Relations*, 494 So. 2d 437, 439 (Ala. Civ. App. 1986) (holding that claimant "has the burden of showing his lack of disqualification"); C. Hall, Annotation, *Unemployment Compensation: Burden of Proof as to Voluntariness of Separation*, 73 A.L.R.4th 1093 (1989) (collecting cases), it is broadly consistent with the remedial purposes of our unemployment compensation statute and case law. See *Fleece on Earth v. Dep't of Emp't & Training*, 2007 VT 29, ¶ 5, 181 Vt. 458, 923 A.2d 594 (reaffirming principle that unemployment compensation act is a "remedial law, having benevolent objectives, and must be given liberal construction"); *Isabelle v. Dep't of Emp't & Training*, 150 Vt. 458, 460, 554 A.2d 660, 661 (1988) (noting that employee had burden to prove good cause for voluntarily leaving employment). Therefore, as explained below, the hearing officer in this case must determine on remand whether employer met its burden of proving that claimant left work voluntarily.

¶ 10. Informing that decision are critical questions concerning the nature and effect of the leave of absence, if any, undertaken by claimant during the summer of 2010. Claimant maintains in this regard that the ALJ and the Board erred as a matter of law in concluding that her voluntary departure on what claimant thought was a leave of absence was necessarily a voluntary, and therefore disqualifying, separation from employment. In addressing the claim, we are handicapped both by the paucity and the imprecision of the ALJ's findings and conclusions. While the essence of the parties' dispute was whether employer granted claimant a leave of absence with a promise of reinstatement, the ALJ made no express findings on this subject; she merely found that "it was the claimant who initiated the separation from

employment by requesting the leave of absence for the summer to do the bike ride, thus making this a voluntary separation from employment." It is unclear whether the ALJ found that claimant's departure was voluntary because the request was merely "initiated" but not actually granted by employer, or whether it was voluntary regardless of whether the request was granted, or whether other factors such as the alleged promise of reinstatement were relevant.

■ ¶ 11. Despite this apparent confusion, we have stated unambiguously — albeit in a different context — that the term "left the employ" as used in 21 V.S.A. § 1344(a) contemplates a "*complete* and bona fide severance of the employer-employee relationship." *Trapeni v. Dep't of Emp't Sec.*, 142 Vt. 317, 325, 455 A.2d 329, 333 (1982) (emphasis added). Thus, we held that striking workers were engaged in only "a temporary interruption in the performance of services" and therefore were not subject to the "voluntary leaving disqualification." *Id.* Although we have not considered the precise issue presented here, many courts have described the status of an employee on "leave of absence" in nearly identical terms. In *Chenault v. Otis Engineering Corp.*, for example, the court explained: "A leave of absence is not a complete separation from employment; it connotes a continuity of the employment status, during which time performance of the duties of his work by the employee and remuneration by the employer and other fringe benefits may be suspended." 423 S.W.2d 377, 383 (Tex. Civ. App. 1967). Other courts are in accord. See, e.g., *Elder v. Arma Mobile Transit Co.*, 861 P.2d 822, 827 (Kan. 1993) (" 'Leave of absence' is not a complete separation from employment . . . . It denotes a continuity of the employment status — a temporary absence from duty, with intention to return . . . ."); *Union Planters Corp. v. Harwell*, 578 S.W.2d 87, 91 (Tenn. Ct. App. 1978) (holding that quitting employment has "clear connotation of a complete severance" while a " 'leave of absence' is, by the ordinary meaning of the words, something less" and "presumes a continuing relationship").

■ ¶ 12. This understanding of an employee's status on leave of absence has been applied by a number of courts in the unemployment-compensation-benefit context to hold that an employee on leave has not voluntarily left his or her employment. *Neilsen v. Department of Employment Security*, for example, concerned

an employee granted an indefinite leave of absence by his employer to attend to "marital problems." 312 A.2d 708, 709 (N.H. 1973). When the employee sought to return two months later, the employer notified him that his job had been discontinued due to a lack of work. The employee's application for unemployment compensation benefits was denied by the department "on the grounds that the [employee] had voluntarily quit when he left his job to settle his personal affairs." *Id.* The trial court reversed, however, and the New Hampshire Supreme Court affirmed, explaining that the statutory disqualification for voluntary separations from employment contemplated a complete "*termination* of the employer-employee relationship" while a leave of absence, in contrast, "connoted a continuity of employment status." *Id.* at 710. Accordingly, the court held that the employee's separation occurred when he unsuccessfully sought to return to work at the end of the leave, thereby entitling him to benefits. *Id.* at 711.

¶ 13. A similar result was reached in *South Central Bell Telephone Co. v. Administrator, Division of Employment Security,* where an employee was granted a six-month leave of absence to care for her children, albeit with "no express agreement for re-employment." 247 So. 2d 615, 617 (La. Ct. App. 1971). The court observed, nevertheless, that "in the ordinary case, where there is a leave of absence mutually agreed upon by the employer and the employee, the employee does not voluntarily quit his job." *Id.* To conclude otherwise, the court explained, "would defeat the purpose of the statute as social and economic legislation, the benefits of which were intended to be extended so far as possible within the limits imposed by expressed restriction." *Id.* at 618 (quotation omitted). Also instructive is *Lewis v. California Unemployment Insurance Appeals Board,* 128 Cal. Rptr. 795 (Ct. App. 1976), which involved facts similar to those presented here. The employee there was granted a two-month leave to sail a boat from Hawaii to the continental United States, although with "no assurance that she would be reemployed upon her return." *Id.* at 797. When she returned, she was denied reemployment because her position had been eliminated. The unemployment board and the trial court denied her claim for benefits on the ground that she had voluntarily left work without good cause. The court of appeals, however, reversed, explaining that "a 'leave of absence,' taken by an employee, is not a termination of the employment: it preserves the employer-employee relationship in a state of sus-

pense." *Id.* at 801. Thus, if the employee returns to find that he or she has been replaced or the position eliminated, the "consequent unemployment at that time has been caused by the employer's action alone" and the employee "is accordingly not disqualified for benefits by reason of having left his [or her] work voluntarily without good cause." *Id.* at 803-04 (quotation omitted). Furthermore, the court observed that the "existence and effect of a genuine 'leave of absence' is not dependent upon a 'guarantee' by the employer . . . that the employee may or shall return to work at the expiration of the leave." *Id.* at 804; see also *Stankiewicz v. Commonwealth Unemployment Comp. Bd. of Review*, 548 A.2d 366, 368 (Pa. Commw. Ct. 1988) (claimant who returned after six-month leave of absence to find that former position was unavailable had not left voluntarily, and was entitled to unemployment benefits, despite employer's notice that her reemployment could not be guaranteed). But cf. *Div. of Emp't Sec. v. Labor & Ind. Relations Comm'n*, 617 S.W.2d 620, 628 (Mo. Ct. App. 1981) (holding that employee who took leave with understanding that return was contingent upon availability of job left work voluntarily without good cause attributable to employer).

■ ¶ 14. Mindful that our unemployment compensation scheme must be broadly construed so that no claimant is " 'excluded unless the law clearly intends' " it, *Fleece on Earth*, 2007 VT 29, ¶ 5 (quoting *Jones v. Dep't of Emp't Sec.*, 140 Vt. 552, 554, 442 A.2d 463, 464 (1982)), we find the foregoing authorities to be instructive and to provide useful guidelines for the decisionmakers in this case on remand. Therefore, consistent with the views expressed herein, we direct the ALJ on remand to enter additional findings and conclusions on the material issues presented, and to award unemployment compensation benefits to claimant in the event it is determined that she did not leave her employment voluntarily.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*