2011 VT 84



Blue v. Dept. of Labor and Hickok
& Boardman Realty, Inc. (2011-051)

 

2011 VT 84

 

[Filed 28-Jul-2011]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions, Vermont Supreme Court, 109
State Street, Montpelier, Vermont 05609-0801 of any errors in order that
corrections may be made before this opinion goes to press.

 

 


 2011 VT 84 
 
  


 No. 2011-051
 
  


 Katrina Blue
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Employment Security Board 
 
 
  
 
 
  
 
 
 Department of Labor and 
 Hickok & Boardman Realty, Inc.
 
 
 May Term, 2011
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Mary
 Anne Gucciardi and Michael Rogers, Board Members
 
 
  
 James W. Runcie of Ouimette
 & Runcie, Vergennes, for Claimant-Appellant.
  
 Kerin E. Stackpole of Bergeron,
 Paradis & Fitzpatrick, LLP, Burlington, for 
   Respondent-Appellee.
 
  

 

PRESENT:  Reiber, C.J., Dooley, Johnson, Skoglund and
Burgess, JJ.

 

 

¶ 1.     
JOHNSON, J.   Claimant Katrina Blue appeals from an Employment
Security Board decision denying her claim for unemployment compensation
benefits.  Claimant contends the Board erred in: (1) finding that she was
disqualified from receiving benefits because she left her employment
voluntarily; and (2) assigning her the burden of proof.  We reverse and
remand.     

¶ 2.     
Claimant worked for about four years for Hickok & Boardman Realty.  In
the early summer of 2010, claimant left her employment to participate in a
three-month cross-country bicycle ride for multiple
sclerosis in honor of her father, who had died from the disease in 2006. 
The circumstances of her leaving was the principal
subject of dispute below.  Claimant testified that she asked her
supervisor for a three-month unpaid leave of absence and that her supervisor
granted the request and agreed that claimant could return to her position on
September 1, 2010.  Claimant also testified that, in the expectation of
returning, she left a number of personal belongings in her office, including
photographs and a nameplate, although she acknowledged that she received a
check for accrued vacation time when she left and chose not to continue her
health benefits.  Claimant also acknowledged that she did not submit a
written request for leave, as required in the company’s personnel policy, which
states that employees who apply for unpaid personal leave “must apply in
writing” and that “reinstatement is not guaranteed” but rather “at the
Company’s sole discretion.”  While thus conceding that her leave
arrangement “was not typical,” claimant maintained that her supervisor had
agreed “that an exception would be made in this instance.”   
  

¶ 3.     
Claimant’s supervisor remembered matters differently.  She testified that
claimant asked for the leave about a year in advance, in June 2009, and was
told at the time that “it was going to be very difficult” because summer was a
busy time of year and further that “leaves of absence weren’t part of our
practice.”  According to the supervisor, claimant did not renew the
request but instead left on the bicycle trip without a formal leave of absence
and with no promise of a job on her return.  The supervisor acknowledged
that claimant’s name remained on the company’s website and that her log-in and
password remained active through the summer that she was away.  

¶ 4.     
There is no dispute that employer hired several people to perform claimant’s work
functions during her absence, two interns and one temporary part-time
employee.  Nor is it disputed that, when claimant returned to Vermont in
late August 2010 and contacted her employer about returning to work, she was
informed that the part-time employee had been hired on a fulltime basis to
replace her.  The only other witness, a former employee of Hickok &
Boardman, recalled that other employees in the office “believed that [claimant]
was . . . taking a leave of absence from her employment, and coming back, and
her job was there waiting for her.”  She specifically recalled claimant’s
supervisor stating that claimant would be back on September 1. 
          

¶ 5.     
In its ruling, the ALJ’s sparse findings indicate that claimant “requested a
three-month leave of absence” but do not state whether the request was granted
or, if so, on what terms.   Its key conclusion, however, is that
“[w]hile the claimant maintains that she was fired when the employer would not
allow her to come back from a personal leave of absence, it was the claimant
who initiated the separation from employment by requesting the leave of
absence . . . thus making this a voluntary separation from
employment.”  Since there was no claim that the separation was for “good
cause attributable” to the employer, the ALJ concluded that claimant was
disqualified from receiving benefits.  See 21 V.S.A. § 1344(a)(2)(A) (providing that an individual shall be disqualified
from benefits where he or she “has left the employ of his or her last employing
unit voluntarily without good cause attributable to the employing unit”). 
In a divided ruling, the Employment Security Board adopted the ALJ’s findings
and conclusions and sustained its decision.  The dissenting member of the
Board would have found that claimant’s “departure for her cross-country ride
was . . . not a voluntary abandonment of her employment, but a temporary unpaid
leave of absence,” that claimant was let go upon her return in late August, and
therefore that she was entitled to unemployment compensation benefits from that
time forward.  This appeal followed.    

¶ 6.     
Our review of Board decisions is limited.  We will uphold its factual
findings unless clearly erroneous, and its conclusions if reasonably supported
by the findings.  Bouchard v. Dep’t of Emp’t &
Training, 174 Vt. 588, 589, 816 A.2d 508, 510 (2002) (mem.). 
We will also generally defer to its interpretations of the statutes it is
charged with administering, while mindful that they “must be construed
liberally in favor of claimants” to compensate employees laid off involuntarily
through no fault of their own.  Howard v. Dep’t of
Emp’t & Training, 153 Vt. 614, 616, 572 A.2d 931, 932 (1990).  


¶ 7.     
“The claimant has the burden of showing his initial eligibility for benefits.” 
In re Therrien, 132 Vt. 535, 537, 325 A.2d 357, 358
(1974).   Once the claimant has established the basic elements
of employment and termination, however, many courts have held—consistent with
the broadly remedial nature of the unemployment compensation scheme—that a
termination “is presumed to be involuntary unless the employer fulfills its
burden of proving the employee left voluntarily.”  Berkley v. D.C.
Transit, Inc., 950 A.2d 749, 757 (D.C. 2008) (quotation omitted); see,
e.g., Green v. D. C. Dep’t of Emp’t Servs., 499 A.2d 870, 874-76 (D.C.
1985) (holding that presumption of involuntariness comports with rule that
unemployment statute must be construed liberally to accomplish legislative
objective of minimizing economic burden of unemployment); Lewis v. Lakeland
Health Care Ctr., Inc., 685 So. 2d 876, 878 (Fla. Dist. Ct. App. 1996)
(“Given the public policy of, and the statutory requirement to liberally
construe [unemployment statute] we hold that the employer has the initial
burden to establish that the employee voluntarily left the employment.”); Wiese
v. Iowa Dep’t of Job Serv., 389 N.W.2d 676, 679 (Iowa 1986) (interpreting
agency rule providing that “the burden of proof is upon the employer to
establish that the separation was a voluntary leaving of  employment”)
(quotation omitted); Souder v. Ziegler, Inc., 424 N.W.2d 834, 836 (Minn.
Ct. App. 1988) (“The employer has the burden of proving the employee
voluntarily quit his employment.”); In re Johnson, 337 N.W.2d 442, 446
(S.D. 1983) (holding that employer had burden of proving employee voluntarily
quit and therefore was ineligible for benefits); Hutter, Inc. v. Va. Emp’t
Comm’n, 652 S.E.2d 151, 154 (Va. Ct. App. 2007) (“[T]he burden is on the
employer to prove that the claimant left work voluntarily.”) (quotation omitted); Holy Name Sch. v. Dep’t of Indus.,
Labor & Human Relations, 326 N.W.2d 121, 125 (Wis. Ct. App. 1982)
(holding that law presumes employee was not disqualified from unemployment
benefits).

¶ 8.     
Once the employer has shown a voluntary departure, however, the burden is
generally on the employee to prove that he or she quit for good cause
attributable to the employer.  See, e.g., Berkley, 950 A.2d at 761
(where employer proves that termination was voluntary, employee must prove that
she left “for good cause”); Borakove v. Fla. Unemployment Appeals Comm’n,
14 So. 3d 249, 251 (Fla. Dist. Ct. App. 2009) (once employer has met “the
initial burden to establish that the employee voluntarily left employment . . .
then the employee must present evidence to prove that he or she left the
employment for good cause attributable to the employer” (quotation omitted)); Marz
v. Dep’t of Emp’t Servs., 256 N.W.2d 287, 289 (Minn. 1977) (holding that
once employer has sustained burden of “showing the employee has voluntarily
left his employment . . . [t]he burden then shifts to the employee to show good
cause attributable to the employer for leaving”).

¶ 9.     
Although this approach is not employed everywhere, see, e.g., Carlisle v.
Dir., Dep’t of Indus. Relations, 494 So. 2d 437, 439 (Ala. Civ. App. 1986)
(holding that claimant “has the burden of showing his lack of
disqualification”); C. Hall, Annotation, Unemployment Compensation: Burden
of Proof as to Voluntariness of Separation, 73 A.L.R.4th 1093 (1989)
(collecting cases), it is broadly consistent with the remedial purposes of our
unemployment compensation statute and case law.  See Fleece on Earth v.
Dep’t of Emp’t & Training, 2007 VT 29, ¶ 5, 181 Vt. 458, 923 A.2d 594
(reaffirming principle that unemployment compensation act is a “remedial law,
having benevolent objectives, and must be given liberal construction”); Isabelle
v. Dep’t of Emp’t & Training, 150 Vt. 458, 460, 554 A.2d 660, 661
(1988) (noting that that employee had burden to prove good cause for
voluntarily leaving employment).  Therefore, as explained below, the
hearing officer in this case must determine on remand whether employer met its
burden of proving that claimant left work voluntarily.  

¶ 10.   
Informing that decision are critical questions concerning the nature and effect
of the leave of absence, if any, undertaken by claimant during the summer of
2010.  Claimant maintains in this regard that the ALJ and the Board erred
as a matter of law in concluding that her voluntary departure on what claimant
thought was a leave of absence was necessarily a voluntary, and therefore
disqualifying, separation from employment.  In addressing the claim, we
are handicapped both by the paucity and the imprecision of the ALJ’s findings
and conclusions.  While the essence of the parties’ dispute was whether
employer granted claimant a leave of absence with a promise of reinstatement,
the ALJ made no express findings on this subject; she merely found that “it was
the claimant who initiated the separation from employment by requesting the
leave of absence for the summer to do the bike ride, thus making this a
voluntary separation from employment.”  It is unclear whether the ALJ
found that claimant’s departure was voluntary because the request was merely
“initiated” but not actually granted by employer, or whether it was voluntary
regardless of whether the request was granted, or whether other factors such as
the alleged promise of  reinstatement were
relevant.   

¶ 11.   
Despite this apparent confusion, we have stated unambiguously—albeit in a
different context—that the term “left the employ” as used in 21 V.S.A. §
1344(a), contemplates “a complete and bona fide severance of the
employer-employee relationship.”  Trapeni v. Dep’t of Emp’t Sec.,
142 Vt. 317, 325, 455 A.2d 329, 333 (1982) (emphasis added).  Thus, we
held that striking workers were engaged in only “a temporary interruption of
the performance of services” and therefore were not subject to the “voluntary
leaving disqualification.”  Id.  Although we have not
considered the precise issue presented here, many courts have described the
status of an employee on “leave of absence” in nearly identical terms.  In
Chenault v. Otis Engineering Corp., for example, the court explained: “A
leave of absence is not a complete separation from employment; it connotes a
continuity of the employment status, during which time performance of the
duties of his work by the employee and remuneration by the employer and other
fringe benefits may be suspended.” 423 S.W.2d 377, 383 (Tex.
Civ. App. 1968).  Other courts are in accord.  See, e.g., Elder
v. Arma Mobile Transit Co., 861 P.2d 822, 827 (Kan. 1993) ( “ ‘Leave of absence’ is not a complete separation from
employment. . . . It denotes a continuity of the employment status—a temporary
absence from duty, with intention to return.”); Union Planters Corp. v.
Harwell, 578 S.W.2d 87, 91 (Tenn. Ct. App. 1978) (holding that quitting
employment has “clear connotation of a complete severance” while “a ‘leave of
absence’ is, by the ordinary meaning of the words, something less” and
“presumes a continuing relationship”).     

¶ 12.   
This understanding of an employee’s status on leave of absence has been applied
by a number of courts in the unemployment-compensation-benefit context to hold
that an employee on leave has not voluntarily left his or her employment. 
Neilsen v. Department of  Employment Security,
for example, concerned an employee granted an indefinite leave of absence by
his employer to attend to “marital problems.” 312 A.2d 708,
709 (N.H. 1973).  When the employee sought to return two months
later, the employer notified him that his job had been discontinued due to a
lack of work.  The employee’s application for unemployment compensation
benefits was denied by the department “on the grounds that the [employee] had
voluntarily quit when he left his job to settle his personal affairs.”  Id.  
The trial court reversed, however, and the New Hampshire Supreme Court
affirmed, explaining that the statutory disqualification for voluntary
separations from employment contemplated a complete “termination of the
employer-employee relationship” while a leave of absence, in contrast,
“connoted a continuity of employment status.”  Id.
at 710.  Accordingly, the court held that the employee’s separation
occurred when he unsuccessfully sought to return to work at the end of the
leave, thereby entitling him to benefits.  Id. at
711.  

¶ 13.   
A similar result was reached in South Central Bell Telephone Co. v.
Administrator, Division of Employment Security, where an employee was
granted a six-month leave of absence to care for her children, albeit with “no
express agreement for re-employment.” 247 So. 2d 615, 617
(La. Ct. App. 1971).  The court observed, nevertheless, that “in the
ordinary case, where there is a leave of absence mutually agreed upon by the
employer and the employee, the employee does not voluntarily quit his
job.”  Id.  To conclude otherwise, the court explained, “would
defeat the purpose of the statute as social and economic legislation, the
benefits of which were intended to be extended so far as possible within the
limits imposed by express restriction.”  Id. at
618 (quotation omitted).  Also instructive is Lewis v.
California Unemployment Insurance  Appeals Board,
128 Cal. Rptr. 795 (Cal. Ct. App. 1976), which involved facts similar to those
presented here.  The employee there was granted a two-month leave to sail
a boat from Hawaii to the continental United States, although with “no
assurance that she would reemployed upon her return.”  Id.
at 797.  When she returned, she was denied reemployment because her
position had been eliminated.  The unemployment board and the trial court
denied her claim for benefits on the ground that she had voluntarily left work
without good cause.  The court of appeals, however, reversed, explaining
that “a ‘leave of absence’ taken by an employee is not a termination of the
employment: it preserves the employer-employee relationship in a state of
suspense.”  Id. at 801.  Thus, if the
employee returns to find that he or she has been replaced or the position
eliminated, the “consequent unemployment at that time has been caused by the
employer’s action alone” and the employee “is accordingly not disqualified for
benefits by reason of having left his [or her] work voluntarily without good
cause.”  Id. at 803-804 (quotation omitted).  Furthermore, the
court observed that the “existence and effect of a genuine ‘leave of absence’
is not dependent upon a ‘guarantee’ by the employer . . . that the employee may
or shall return to work at the expiration of the leave.”  Id. at
804; see also Stankiewicz v. Commonwealth Unemployment Comp. Bd. of Review,
548 A.2d 366, 368 (Pa. Commw. Ct. 1988) (claimant who returned after six-month
leave of absence to find that former position was unavailable had not left
voluntarily, and was entitled to unemployment benefits, despite employer’s
notice that her reemployment could not be guaranteed); but cf. Div. of Emp.
Sec. v. Labor & Ind. Relations Comm’n, 617 S.W.2d 620, 628 (Mo. Ct.
App. 1981) (holding that employee who took leave with understanding that return
was contingent upon availability of job left work voluntarily without good
cause attributable to employer).                

¶ 14.   
Mindful that our unemployment compensation scheme must be broadly construed so
that no claimant is “excluded unless the law clearly intends” it, Fleece on
Earth, 2007 VT 29, ¶ 5 (quoting Jones v. Dep’t of Emp’t Sec., 140
Vt. 552, 554, 442 A.2d 463, 464 (1982)), we find the foregoing authorities to
be instructive and to provide useful guidelines for the decisionmakers in this
case on remand.  Therefore, consistent with the views expressed herein, we
direct the ALJ on remand to enter additional findings and conclusions on the
material issues presented, and to award unemployment compensation benefits to
claimant in the event it is determined that she  did not leave her
employment voluntarily.   

Reversed and
remanded for further proceedings consistent with the views expressed herein.   
   

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice