Department of Employment Security
No. 2011-644

APPEAL OF CASEY B. MOORE
(New Hampshire Department of Employment Security)

Argued: June 7, 2012
Opinion Issued: August 21, 2012

*New Hampshire Legal Assistance*, of Concord (*Sarah Mattson* on the brief and orally), for the petitioner.

*Michael A. Delaney*, attorney general (*James S. Culp*, attorney, on the brief and orally), for the New Hampshire Department of Employment Security.

LYNN, J. The petitioner, Casey B. Moore, appeals a decision of the appeal tribunal (tribunal), as affirmed by the appellate board, of the New Hampshire Department of Employment Security (DES) finding him ineligible for unemployment benefits because he voluntarily left his job without good cause. *See* RSA 282-A:32, I(a) (2010). We affirm.

The record supports the following facts. Moore began working as an arborist in 2008 for Guillemette Tree Services (GTS), a small business owned by Ken Guillemette. He worked part-time at a rate of $31.25 per hour, sometimes getting paid as an employee of GTS and sometimes as an independent contractor. On Thursday, July 15, Moore and Guillemette had

a dispute about when Moore would be paid for work he had previously performed. The following Saturday, Moore met with Guillemette to collect his wages, which Guillemette paid partially by cash and partially by check. He also issued Moore a written warning for failing to show up at work on the previous day. Moore, however, claimed he was unaware that he had been required to work that day.

The next Monday, Moore arrived at Guillemette's house early in the morning to begin that day's work. Before they started work, however, Moore told Guillemette that he wanted to "finish our conversation from Saturday," and stated that he wished to continue working for GTS as a subcontractor for $51.25 per hour. Guillemette expressed frustration and said, "I'll have to think about it." He then asked Moore, "So what's going on for today?" Moore responded that he would work as soon as Guillemette hired him as a subcontractor. Moore then left, and there was no further contact between them.

Moore thereafter applied for unemployment benefits, but DES denied his application based upon its finding that he voluntarily left his job at GTS without good cause. *See* RSA 282-A:32, I(a). Moore appealed and the tribunal held a hearing at which only Moore and his attorney appeared. The tribunal affirmed the denial of benefits because it also concluded that Moore voluntarily left his job. Moore then filed a motion to re-open the tribunal hearing, which was denied. He subsequently appealed to the appellate board, which affirmed the tribunal's ruling. The appellate board denied his timely motion for reconsideration, and this appeal followed.

On appeal, Moore argues that the appeal tribunal erred by failing to assign the burden of proof to GTS to show that Moore left work voluntarily. The State, on the other hand, argues that whether a claimant voluntarily quit or was fired is a factual inquiry to be made in the first instance by DES. Moore also argues that, whatever the burden of proof, the tribunal erred in concluding that he left work voluntarily.

Judicial review of DES decisions is governed by RSA 282-A:67 (2010):

> The court shall not substitute its judgment for that of the appeal tribunal as to the weight of the evidence on questions of fact. The court shall reverse or modify the decision of the appeal tribunal, or remand the case for further proceedings, as determined by the court, only if the substantial rights of the appellant had been prejudiced because the administrative findings, inferences, or conclusions are:
>
> (a) In violation of constitutional or statutory provisions;
>
> (b) In excess of statutory authority;

(c) Made upon unlawful procedures;

(d) Clearly erroneous in view of the substantial evidence on the whole record; or

(e) Affected by other error of law.

RSA 282-A:67, V.

■ We have not previously had occasion to address the issue of which party bears the burden of proof with regard to eligibility for unemployment compensation benefits. Our review of the overall statutory scheme as well as case law from other jurisdictions persuades us that the burden of initially proving statutory eligibility for benefits rests with the claimant. *Cf. Steffen v. Davison, Copple et al.*, 814 P.2d 29, 32 (Idaho 1991); *Duncan v. Accent Marketing LLC*, 328 S.W.3d 488, 491 (Mo. App. 2010); *Blue v. Department of Labor*, 27 A.3d 1096, 1098 (Vt. 2011). Once the claimant has established the basic elements of employment and termination, however, the burden is on the employer — or the DES, if it opposes payment of the claim and the employer did not participate in the proceedings — to establish that a disqualification applies. *Cf. Appeal of John Hancock Distributors*, 146 N.H. 124, 127 (2001) ("Where the applicability of a statutory exception is contested, the burden is on the purported employer to establish the exception."). For example, the employer may show, among other disqualifications, that the individual "left work voluntarily without good cause in accordance with the rules of the commissioner," RSA 282-A:32, I(a); that the individual was "discharged for misconduct connected with his work," RSA 282-A:32, I(b); or, that the individual has "failed, without good cause, either to apply for available, suitable work when so directed . . . or to accept suitable work when offered him," RSA 282-A:32, I(d).

■ Of course, the mere fact that the employer normally bears the burden of proving that a disqualification applies does not preclude DES from concluding, based upon all the evidence presented, that the employee is ineligible for benefits under a statutory disqualification even where the employer does not appear in the DES proceedings. In other words, such a finding need not derive solely from evidence proffered *by the employer*, as a contrary rule would all but require the State to pay benefits whenever the employer is unavailable or unwilling to participate in the proceedings.

■ In this case, Moore's own testimony established that he voluntarily quit working for GTS. He admitted, for example, that on the very morning he alleges that he was fired, Guillemette expected that they would proceed to work as usual. Yet he told Guillemette that he would not work that day unless he was hired as a subcontractor for $51.25 per hour — $20 more per

hour than he had been paid the previous two years. Moore presented no evidence to support his claim that Guillemette fired him; to the contrary, Moore admitted that Guillemette was "frustrated" and "all ticked off" when faced with the choice of either acceding to Moore's request for a significant pay raise or losing him as an employee altogether. And, instead of continuing to work while Guillemette considered his demand for increased pay, Moore left of his own volition and thereafter severed his relationship with Guillemette. Therefore, under these facts, there is ample support for DES's finding that Moore voluntarily "terminate[d] the employee-employer relationship." *See* N.H. ADMIN. RULES, Emp 503.01(a)(1).

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.