2014 VT 61

## 863 To Go, Inc. v. Department of Labor

[99 A.3d 629]

No. 13-413

Present: Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.

Opinion Filed June 13, 2014

*Pietro J. Lynn* and *Alexander G. Lewis* of *Lynn, Lynn & Blackman, P.C.*, Burlington, for Plaintiff-Appellant.

*Dirk Anderson*, Montpelier, for Defendant-Appellee.

¶ 1. **Crawford, J.** The single issue in this appeal is whether payments by employer 863 To Go, Inc. to its delivery drivers should be excluded from the calculation of employer's contribution to Vermont's system of unemployment compensation. We affirm

the decision of the Vermont Employment Security Board requiring employer to include these payments in the calculation of its unemployment contribution.

¶ 2. Employer is a Vermont corporation which provides food delivery services to Burlington-area restaurants that do not employ drivers of their own. The company commenced operations in 2005. Its business model involves five groups or entities: employer; the restaurants that contract with employer for marketing and delivery services; Delivery Drivers, Inc. (DDI), an employment agency located in California; the individual drivers; and the individual consumers who order food for home delivery.

¶ 3. Consumers call employer, frequently after visiting the company's website, which displays the menus of participating restaurants. They place an order and arrange payment to employer either by credit card or by cash to be collected by the delivery driver. The price includes a delivery charge that varies by location and distance. Employer faxes the order to the restaurant. It pays the restaurant directly for the meal on a discounted basis.

¶ 4. In the meantime, the delivery job is placed on a website for approved drivers. These drivers are people willing to deliver food to customers in their own vehicles. Drivers learn about the employment opportunity through word of mouth, local advertisements, or a Craigslist advertisement. People who respond are directed to DDI. DDI collects information from applicants including their driver's license number and proof of automobile insurance. DDI then arranges for each applicant to meet with a representative from employer. If the applicant is eligible for employment, they are given access to employer's website. Each driver decides whether to accept a particular delivery assignment.

¶ 5. At the end of each night, the drivers "cash out" at employer's office, meaning that they turn over the cash or credit card slips paid by the customers. The amounts collected by drivers include the cost of the meal and the fixed delivery charge. They keep any cash tips. Employer sends enough money to DDI to pay for its commission and a per-trip payment to the drivers.

¶ 6. Individual drivers play no role in taking the orders from customers. Their responsibility is limited to delivering the food to the customers. They are also required to pick up payment from customers who have not already paid by credit card over the telephone. They purchase equipment necessary for delivery such as an insulated food carrier from employer. At one time they were

required to wear a uniform shirt, but this policy was dropped in favor of a requirement of clean, neat attire. Some drivers place employer advertising decals on their cars, but this is not mandatory.

¶ 7. Following a field audit, the Unemployment Insurance and Wage Division of the Vermont Department of Labor assessed an unemployment compensation contribution against employer for wages paid to 136 individual drivers over twelve quarterly periods. Employer petitioned for a hearing. A factual hearing was held before an administrative law judge in the Office of Administrative Hearings at the Department of Labor. The judge ruled in favor of the Department. This decision was upheld by a written decision of the Vermont Employment Security Board. Employer appealed directly from the Board to this Court. See 21 V.S.A. § 1332.

¶ 8. ■ Our review of decisions by the Employment Security Board is highly deferential. See *Fleece on Earth v. Dep't of Emp't & Training*, 2007 VT 29, ¶ 4, 181 Vt. 458, 923 A.2d 594 ("The Board's decision is entitled to great weight on appeal." (quotation omitted)). We will uphold the Board's factual findings unless clearly erroneous, and its conclusions if reasonably supported by the findings. *Blue v. Dep't of Labor*, 2011 VT 84, ¶ 6, 190 Vt. 228, 27 A.3d 1096. "We will also generally defer to its interpretations of the statutes it is charged with administering." *Id.* Decisions within the Board's expertise are presumed to be correct unless there is a clear showing to the contrary. *Bouchard v. Dep't of Emp't & Training*, 174 Vt. 588, 589, 816 A.2d 508, 510 (2002) (mem.).[*]

¶ 9. Under Vermont's unemployment compensation statute, all persons who receive wages from an employer are presumed to be engaged in "employment" and are entitled to unemployment compensation benefits. 21 V.S.A. § 1301(5), (6)(B), (12); *Fleece on Earth*, 2007 VT 29, ¶ 7. Employers are required to pay for

---

[*] Contrary to employer's argument, it is not entitled to de novo review. The Board's decision in this case involves interpretation of the statute that the Board is charged with administering. This is not a case involving statutory construction of "provisions not involving any facts or employment-specific knowledge," see *Windham Cnty. Sheriff's Dep't v. Dep't of Labor*, 2013 VT 88, ¶ 6, 195 Vt. 1, 86 A.3d 410, or the application of judicially created doctrines outside the expertise of the administrative agency. *In re Cent. Vt. Pub. Serv. Corp.*, 172 Vt. 14, 19, 769 A.2d 668, 673 (2001).

unemployment compensation insurance for their employees. 21 V.S.A. §§ 1321, 1358.

¶ 10. In this case, employer initially contended that its drivers were self-employed persons whose services were exempt from the definition of employment under the so-called "ABC test" set forth in 21 V.S.A. § 1301(6)(B). Employer dropped that argument on appeal to the Employment Security Board, and instead argued that it was not required to make unemployment contributions on behalf of its drivers because they were "direct sellers" within the meaning of 21 V.S.A. § 1301(6)(C)(xxi). On appeal to this Court, employer limits its argument to the direct-seller exemption.

¶ 11. Section 1301(6)(C)(xxi) exempts from the definition of employment "[s]ervice[s] performed by a direct seller if the individual is in compliance with all" of the following factors:

(I) The individual is engaged in the trade or business of selling or soliciting the sale of consumer products, including services or other intangibles, in the home or a location other than in a permanent retail establishment, including whether the sale or solicitation of a sale is to any buyer on a buy-sell basis, a deposit-commission basis, or any similar basis for resale by the buyer or any other person.

(II) Substantially all the remuneration, whether or not received in cash, for the performance of the services described in subdivision (I) of this subdivision (C)(xxi) is directly related to sales or other output, including the performance of services, rather than to the number of hours worked.

(III) The services performed by the individual are performed pursuant to a written contract between the individual and the person for whom the services are performed, and the contract provides that the individual will not be treated as an employee for federal and state tax purposes.

21 V.S.A. § 1301(6)(C)(xxi). The provision exempts independent sales staff located somewhere other than a store who are paid on the basis of sales concluded rather than hours spent on the job. Familiar examples include commission-based sales of products, often door-to-door.

¶ 12. In reviewing the claim that employer's drivers were direct sellers, the Employment Security Board ruled that the drivers were not "selling" anything since the sale occurred prior to the delivery of the products:

> The sale or solicitation of sale has already occurred by the time the driver even becomes aware that there is work available for him or her. The drivers in this case are similarly situated to drivers employed by courier services, whom we have repeatedly found to be employees rather than independent contractors.

¶ 13. ■ We agree with the Board that the facts in the record support the determination that the drivers are not engaged in "selling or soliciting the sale of consumer products." 21 V.S.A. § 1301(6)(C)(xxi)(I). In a process known to anyone who has ever ordered a pizza, the customer calls in his or her order. A bilateral contract based on an exchange of mutual promises is formed. The customer promises to pay for the meal either upon delivery or before. The price is set, except for any gratuity, as is the description of the meal. Employer promises to obtain the food and arrange for its delivery. In theory, either party could sue for damages in the event of a breach. In practice, a consumer unhappy with the food will make a different choice next time.

¶ 14. The delivery driver plays no discernible role in creating the contract of sale. The record contains no evidence that he or she can vary the terms of sale, either with respect to price or to product. The driver's only role is to deliver the food and to pick up the purchase price if it has not already been paid. He or she has not "sold" anything. He or she has, obviously, "delivered" dinner.

¶ 15. Employer directs the Court's attention to the occasional nature of the drivers' work. Drivers accept assignments as they wish and are paid on the basis of how many deliveries they complete. Their employment contract describes them as "self-employed." The casual, self-employed nature of the delivery job is relevant to the second and third criteria set forth in § 1301(6)(C)(xxi). The Department of Labor concedes for the purposes of this appeal that these criteria are met. These characteristics of the job, however, have no bearing on the threshold question of whether the drivers are engaged in selling or soliciting sales.

¶ 16. The Vermont exemption for direct sellers is closely modeled after a provision of the Internal Revenue Code that exempts employers from paying employment taxes for direct sellers. Compare 26 U.S.C. § 3508(b)(2)(A)-(C), with 21 V.S.A. § 1301(6)(C)(xxi). Employer argues that this case is similar to *Smoky Mountain Secrets, Inc. v. United States*, 910 F. Supp. 1316 (E.D. Tenn. 1995), in which a federal court determined that delivery drivers for a company that marketed gourmet food products qualified as direct sellers under the federal exemption. The *Smoky Mountain Secrets* decision focused on the participation of the company's drivers in "closing" the sales transaction as a basis for finding that they were engaged in "selling" the product:

> [Plaintiff's] delivery persons were an integral part of [plaintiff's] sales force; their services did not consist of merely driving to the customer's home and handing over the package. The delivery person had to collect the amount due, which often meant that he or she had to close the sale. Neither the delivery person nor the telemarketer would be paid unless the package was accepted and paid for by the consumer. Thus, the reason [plaintiff's] own delivery persons were used instead of common carrier was to obtain the opportunity to close the sale face-to-face if a delivery was refused. Two of plaintiff's managers . . . each of whom had previously worked for [plaintiff] as delivery persons, testified that the person delivering the packages was often called upon to close sales, such as when a customer has changed his or her mind, did not know the terms of the sale, or when an unknowledgeable spouse refused to accept the package. [They] further testified that delivery persons also made sales on a "show-me" basis, in which additional packages are shown and sold to customers and to their neighbors. Consequently, I find that closing the sale was as much an art as was obtaining the order over the telephone in the first place.

*Id.* at 1318-19 (footnote omitted).

¶ 17. In this case, although employer's drivers also picked up money from customers, there is no evidence that they "closed" the sale when customers changed their mind or an "unknowledgeable spouse" declined delivery. There is also no evidence that they

made "additional" sales at the doorstep. Their services are almost entirely delivery services with the ability to accept payment on a cash-on-delivery basis.

¶ 18. Given the record in this case, we agree with the Board that the drivers were not engaged in "selling or soliciting" within the meaning of the statute. Since the "selling" requirement of the exemption was not met, we affirm the decision of the Employment Security Board that employer is obligated to pay an unemployment compensation contribution to the Department of Labor with respect to its delivery drivers.

*Affirmed.*